**MATERN LAW GROUP, PC**
Matthew J. MATERN (SBN 159798)
mmatern@maternlawgroup.com
Tagore Subramaniam(SBN 280126)
tagore@maternlawgroup.com
Daniel J. Bass (SBN 287466)
dbass@maternlawgroup.com
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
Telephone:  (310) 531-1900
Facsimile:  (310) 531-1901

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD GOLDSTEIN, an individual, JOHN COVAS, an individual, and GISELA JANETTE LA BELLA, an individual, HANY YOUSSEF, an individual,  individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> Defendants EXXON MOBIL CORPORATION, a New Jersey corporation; PBF ENERGY INC, a Delaware corporation; TORRANCE REFINING COMPANY, LLC, a Delaware Limited Liability Company; PBF ENERGY WESTERN REGION, LLC , a Delaware Limited Liability Company; PBF HOLDING COMPANY, LLC, a Delaware Limited Liability Company; PBF ENERGY COMPANY, LLC, a Delaware Limited Liability Company; STEVEN STEACH, an individual; and DOES 1 through 100, inclusive, <br><br> Defendants | CASE NO.: 2:17-cv-02477-DSF (SKx) <br><br> **SECOND AMENDED COMPLAINT** <br><br> **CLASS ACTION:** <br><br> 1.  Negligence <br> 2.  Strict Liability-Ultrahazardous Activity <br> 3.  Private Nuisance (Continuing) <br> 4.  Private Nuisance (Permanent) <br> 5.  Public Nuisance (Continuing) <br> 6.  Public Nuisance (Permanent) <br> 7.  Trespass <br><br> **DEMAND FOR JURY TRIAL** |

MATERN LAW GROUP
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN
BEACH, CA 90266

1

SECOND AMENDED COMPLAINT

PLAINTIFFS ARNOLD GOLDSTEIN, JOHN COVAS, GISELA JANETTE LA BELLA, and HANY YOUSSEF ("PLAINTIFFS") bring this class action ("Complaint") against Defendants EXXON MOBIL CORPORATION ("EXXON"); TORRANCE REFINING COMPANY, LLC ( "TRC"); and DOES 1-100 (collectively "DEFENDANTS"). PLAINTIFFS aver the following upon personal knowledge and information and belief based upon the investigation of counsel as to all other facts alleged in the Complaint:

1.     This case represents an example of a corporate choice to place profits over public safety. It arises from the massive refinery explosion that occurred on February 18, 2015 at DEFENDANTS' Torrance Refinery ("Refinery"), the extensive fallout from that explosion, and the years of neglect, lax oversight, and corporate indifference to necessary safety, operating standards, and the failure to exercise necessary diligence, that caused numerous fires, leaks, explosions, and other releases of dangerous pollutants.

2.     On February 11, 2015 the Fluid Catalytic Cracking ("FCC") expander at the Refinery, a unit that converts oil to gasoline by "cracking" the large oil molecules apart into smaller ones, began experiencing vibrations that continued to worsen over the course of several days.

3.     On February 16, 2015 the expander vibrations exceeded a specified limit which caused the FCC unit to switch to a "park" mode by the preset logic controls.

4.     PLAINTIFFS are informed and believe that in the early morning of February 18, 2015 maintenance workers who were dispatched to the FCC expander became concerned about the amount of steam coming from the FCC expander. As the steam reduced, however, hydrogen sulfide alarms started, requiring Refinery workers to exit the FCC unit.

5.     As residents and workers were finishing their morning commutes on February 18, 2015 a blast which hit the Torrance area with a shockwave

comparable to an earthquake, originated from the refinery's 12-story electrostatic precipitators ("ESP"). As a result, the residents, commuting workers, and business owners of the Torrance area suffered significant economic harm.

6.     The explosion was not a freak accident nor a chance occurrence, and it released dangerous compounds into the atmosphere in and surrounding the City of Torrance. The explosion and resulting release were inevitable byproducts of DEFENDANTS' willful and conscious disregard of public safety. In the aftermath of the explosion, copious evidence of multiple health and safety violations at the Torrance refinery all point to one conclusion: it was only a matter of time until the failures and poor decisions by DEFENDANTS' officers, directors, and managing agents allowed such an incident to occur.

7.     Following the explosion, California's Division of Occupational Safety and Health (Cal/OSHA) ordered Defendant EXXON to shut down the unit until it could demonstrate safe operation.

8.     PLAINTIFFS are informed and believe and thereon allege that since as early as 2007, DEFENDANTS were aware of safety concerns, including those of Cal/OSHA, regarding the ESP, but DEFENDANTS did not act to resolve those concerns.

9.     PLAINTIFFS are informed and believe and thereon allege that since as early as 2006, DEFENDANTS were aware of safety concerns, including those of Cal/OSHA, regarding FCC unit, but DEFENDANTS did not act to resolve those concerns.

10.     In addition to ignoring the dangers from lack of proper maintenance and safe operations, DEFENDANTS' officers, directors, and managing agents, used a specific process while operating the refinery that utilizes the highly toxic substance known as modified hydrofluoric acid ("MHF").

11.     Hydrofluoric acid was previously banned in the 1990s by the Air Quality Management District ("AQMD") until challengers overturned the ban in

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

3                                    SECOND AMENDED COMPLAINT

court.

12.    Following the general ban on hydrofluoric acid, the Refinery began using a MHF substitute in its refining process.

13.    The Refinery's MHF storage tanks lie within the blast radius of the ESP that exploded on February 12, 2015. Due to the blast, thousands of pounds of equipment and large pieces of debris hit the scaffolding and general area that was surrounding a tank containing MHF. If the equipment had hit the tank it likely would have caused a catastrophic release of MHF into the surrounding area and neighborhoods.

14.    PLAINTIFFS are informed and believe and thereon allege that just within a short 3-mile radius distance of the Refinery there are over 330,000 residents, 71 schools, and 8 hospitals.

15.    Following the February 18, 2015 explosion, the Refinery underwent repairs, but did not change its use of MHF or location of the storage tanks.

16.    On or about May 10, 2016, approximately 15 months after the February 18, 2015 explosion, the refinery began a re-start process in order to once again begin operating. During the initial period of this restart process, until the ESP began operation, the refinery operated without pollution-control devices.

17.    PLAINTIFFS are informed and believe, and thereon allege, that during the time period that the Refinery began operations without pollution-control devices at least hundreds of pounds of excess particulate emissions were released.

18.    PLAINTIFFS are informed and believe, and thereon allege, that the restart of the Refinery was rushed so that it would be operating prior to Defendant EXXON's sale to TRC and its affiliate entities.

19.    On or about July 1, 2016 TRC and its owning entities completed the purchase of the Refinery through a subsidiary company for a price of approximately $537.5 million, plus working capital.

20.    DEFENDANTS have and/or continue to operate the Refinery in a

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

4                                        SECOND AMENDED COMPLAINT

manner that creates a nuisance and additional pollutants, including multiple flaring events — the burning off of gas during certain scheduled maintenance events and unscheduled malfunctions — that have occurred multiple times since the restart of the refinery.

21.   Flaring events include, but are not limited to, a September 19, 2016 and an October 11, 2016 flaring event caused by power outages and a July 11, 2016 flaring event caused by a software malfunction. PLAINTIFFS are informed and believe, and thereon allege, that these flaring events are avoidable and cause an increase in the emission of pollutants near the Refinery.

22.   DEFENDANTS have and/or continue to operate the Refinery in a manner that creates ultrahazardous conditions, including continued volatile and potentially explosive processes near MHF storage tanks.

**The 2015 Explosion**

23.   Immediately following the February 18, 2015 explosion, ARNOLD GOLDSTEIN watched as ash fell from the sky like snow, covering the area around him and obscuring vision on the street. Since the time of his exposure to the fallout of the explosion, ARNOLD GOLDSTEIN has developed and suffers from a persistent cough and diagnosed asthma.

24.   Immediately following the February 18, 2015 explosion, GISELA JANETTE LA BELLA was jogging with her dog when the fallout and ash began to land around them both. Since the time of GISELA JANETTE LA BELLA's exposure to the fallout of the explosion she has suffered damage to her larynx, causing her great pain in her second job as a singer. Since the time of GISELA JANETTE LA BELLA's exposure to the fallout of the explosion her dog became seriously ill and required expensive veterinary intervention and treatment.

25.   Immediately following the February 18, 2015 explosion HANY YOUSSEF watched while ash and other debris fell on his property from the explosion and resulting fire.

**Groundwater Contamination**

26.     Defendant EXXON conducted tests in and around several homes on Del Amo Boulevard in Torrance, California following complaints of gasoline-like odors, concerns about air quality and the presence of methane gas. These tests revealed that contaminants from the Refinery had entered the groundwater and extended out in a "plume" into the neighboring community.

27.     The DEFENDANTS' soil and groundwater contamination remains today and these plumes of harmful contaminants, including Benzene and other volatile organic compounds, and petroleum products, have consistently volatized into gases and vapors ("soil gas") in the areas above these plumes. DEFENDANTS' own required investigations and reporting show the continued existence of this contamination, which may be far more extensive than self-reported. See Exhibits 1-3 (Groundwater Contamination Plume Maps), incorporated herein by reference.

28.     Exhibit 1 is a true and correct copy of a figure showing a recognized plume of Free-phase Hydrocarbon Product ("FHP") contamination on a contour map of the surrounding community which Defendant EXXON submitted to the California Regional Water Quality Control Board Los Angeles Region on April 21, 2015. Exhibit 2 is a true and correct copy of a figure showing a plume of Benzene contamination on a contour map of the surrounding community which Defendant EXXON attached to the same report.

29.     Exhibit 3 is a true and correct copy of a figure showing a recognized plume of Benzene contamination on a similar contour map of the surrounding community which Defendant EXXON submitted to the California Regional Water Quality Control Board Los Angeles Region on August 18, 2018.

30.     When HANY YOUSSEF purchased his home on Del Amo Boulevard with his wife, he was unaware of the Benzene and other industrial chemicals in the groundwater beneath his home. At no time have DEFENDANTS issued any notice

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

6                                    SECOND AMENDED COMPLAINT

to YOUSSEF or other residents and persons about the danger lurking below his home and the areas as reflected in EXXON's investigations and reports. By and through their wrongful acts, DEFENDANTS' have occupied and used the properties of PLAINTIFFS including YOUSSEF for the storage of materials including toxic substances, and DEFENDANTS' wrongful use of the properties including by trespass, entitles PLAINTIFFS to the greater of the reasonable rental value of the properties or the benefits obtained by the DEFENDANTS wrongfully occupying the properties by reason of the wrongful occupations.

## JURISDICTION AND VENUE

31.    The District Court of the Central District of California has jurisdiction in this matter because PLAINTIFFS are residents of the State of California, and Defendants EXXON, TRC; and DOES 1 through 100 inclusive (collectively "DEFENDANTS"), are qualified to do business in California and regularly conduct business in California. DEFENDANTS removed this matter from the Superior Court of the State of California under the Class Action Fairness Act and Plaintiffs did not seek remand. No federal question is at issue because the claims are based solely on California law.

32.    Venue is proper in this judicial district and the County of Los Angeles, California because PLAINTIFFS, and other persons similarly situated, reside in the County of Los Angeles, DEFENDANTS maintain offices and facilities and transact business in the County of Los Angeles, and because DEFENDANTS' illegal and wrongful actions which are the subject of this action occurred to PLAINTIFFS, and other persons similarly situated, in the County of Los Angeles.

## PLAINTIFFS

33.    Plaintiff ARNOLD GOLDSTEIN, is a male resident of the State of California and the City of Torrance as well as a small business owner in the City of Torrance, who has suffered physical and economic harm as a result of DEFENDANTS' actions and inactions.

34.     Plaintiff JOHN COVAS, is a male resident of the State of California and the City of Torrance as well as a licensed realtor doing business in the City of Torrance, who has suffered economic harm as a result of DEFENDANTS' actions and inactions.

35.     Plaintiff GISELA JANETTE LA BELLA, is a female resident of the State of California and is employed within the City of Torrance, who has suffered physical and economic harm as a result of DEFENDANTS' actions and inactions.

36.     Plaintiff HANY YOUSSEF is a male resident of the State of California who lives in the Del Amo Boulevard neighborhood, which directly borders the Refinery to the South.  YOUSSEF has suffered, continues to suffer, and will suffer economic harm as a result of DEFENDANTS' actions and inactions, including but not limited to damage to his property due to DEFENDANTS' release of harmful chemicals, as well as delays in construction of an accessory dwelling unit ("ADU") for rental income and/or sale of his home, due to a fear of potential disclosures and liabilities to potential tenants of that ADU and/or prospective buyers, all arising from the groundwater contamination caused by DEFENDANTS.

37.     PLAINTIFFS bring this case as a class action on behalf of themselves and all other similarly situated individuals who reside and/or are employed within a three mile radius of the Refinery ("CLASS MEMBERS"), pursuant to California Code of Civil Procedure section 382.

38.     This action is perfectly suited for class action treatment since a well-defined community of interest in the litigation exists and the class is easily ascertainable. The aforementioned class definition identifies a group of unnamed plaintiffs by a set of shared characteristics adequate for an individual to identify him or herself as a member of the group with the right to recover. The CLASS MEMBERS may receive proper and sufficient notice directly or through publication.

39.     Commonality and Predominance: DEFENDANTS' conduct and the

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

8                                    SECOND AMENDED COMPLAINT

scope of its impact raise common issues of fact and law among all members of the class, and common questions of law or fact are substantially similar and predominate over questions that may affect only individual CLASS MEMBERS. DEFENDANTS' unreasonable repairs, operation, and maintenance of the Refinery is a common nucleus of operative fact linking every CLASS MEMBER. Each member of the proposed class claims that DEFENDANTS negligently repaired, operated and/or maintained the Torrance Refinery, which resulted in the release of harmful pollutants, noxious odors, and excessive noise invading CLASS MEMBERS' land, causing diminished use and enjoyment of their properties, pollution of the land and air in and around CLASS MEMBERS' properties, and/or caused adverse health effect. Additionally, DEFENDANTS intentionally, recklessly, and/or negligently failed to abate these pollutants, noxious odors, and excessive noises. While slight variations in individual damages may occur, common questions of law and fact regarding DEFENDANTS' liability substantially predominate over any questions affecting only individual CLASS MEMBERS such that class treatment should be permitted for the fair and efficient adjudication of this controversy.

40.     Numerosity: The members of the Class are so numerous that joinder of all members would be impracticable. PLAINTIFFS estimate, according to public information available from the City of Torrance, that the population of the City of Torrance is estimated to be approximately 150,000 with a peak day time population of over 200,000 people.  Inclusion of all residents in a 3-mile radius distance of the Refinery increases the number to approximately 330,000 residents with additional commuting employees. While the exact number of members of the Class is presently unknown to PLAINTIFFS and can only be only be determined through discovery, PLAINTIFFS believe the class includes hundreds of thousands of members.

41.     Typicality: PLAINTIFFS' claims are typical of the claims of the

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

9

SECOND AMENDED COMPLAINT

CLASS MEMBERS. PLAINTIFFS and all putative class members were and are subject to the same unsafe conditions, pollutants, noxious odors, and excessive noise by the DEFENDANTS' refinery. DEFENDANTS' course of conduct in violation of law as alleged herein caused PLAINTIFFS and CLASS MEMBERS to sustain the same or similar injuries and damages, including economic injuries, physical injuries, and injury to pets.

42.     Adequacy of Representation: PLAINTIFFS and all putative CLASS MEMBERS do not have any conflicts of interest with other CLASS MEMBERS due to the great degree of commonality, and will prosecute the case vigorously on behalf of the class. Counsel representing PLAINTIFFS and the class are competent and experienced in litigating large class actions. PLAINTIFFS will fairly and adequately represent and protect the interests of the CLASS MEMBERS. Thus, the named PLAINTIFFS are committed to deliver relief for the class and have retained experienced class action counsel.

43.     Superiority of class action: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all CLASS MEMBERS is not practicable, and questions of law and fact common to the class predominate over any questions affecting only individual members of the class. Each CLASS MEMBER has been damaged and is entitled to recovery as a direct result of DEFENDANTS' conduct with respect to the unsafe conditions, pollutants, noxious odors, and excessive noise by the DEFENDANTS' refinery. Moreover, the complexity of this litigation and potential of recovery for individuals renders separate adjudication impracticable. Thus, class action treatment provides optimal resolution of all the CLASS MEMBERS claims in a manner most efficient and economical for both the parties and the judicial system.

## DEFENDANTS

44.     PLAINTIFFS are informed and believe, and thereon allege, that defendant EXXON MOBIL CORPORATION is, and at all times relevant hereto

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

10                                    SECOND AMENDED COMPLAINT

was, a New Jersey corporation organized and existing under the laws of the State of New Jersey. PLAINTIFFS are further informed and believe, and thereon alleges, that defendant EXXON MOBIL CORPORATION is authorized to conduct business in the State of California, and does conduct business in the State of California. Specifically, defendant EXXON MOBIL CORPORATION maintains offices and facilities and conducts business in, and engages in illegal practices in the County of Los Angeles, State of California.

45.     PLAINTIFFS are informed and believe, and thereon alleges, that defendant TORRANCE REFINING COMPANY, LLC is, and at all times relevant hereto was, a Delaware Limited Liability Company organized and existing under the laws of the State of Delaware. PLAINTIFFS are further informed and believe, and thereon allege, that defendant TORRANCE REFINING COMPANY, LLC is authorized to conduct business in the State of California, and does conduct business in the State of California. Specifically, defendant TORRANCE REFINING COMPANY, LLC maintains offices and facilities and conducts business in, and engages in illegal practices in the County of Los Angeles, State of California.

46.     PLAINTIFFS are informed and believe, and thereon allege, that as of December 18, 2012, PBF ENERGY, INC. completed an initial public offering and that as a result of that public offering and related organization transactions, became the sole managing member of PBF ENERGY COMPANY, LLC and operates and controls all of its business and affairs. Further, PLAINTIFFS are informed and believe, and thereon allege, that PBF ENERGY, INC. jointly prepares and files consolidated financial reports with PBF ENERGY COMPANY, LLC and its subsidiaries, including PBF HOLDING COMPANY, LLC.

47.     PLAINTIFFS are informed and believe, and thereon allege, that on September 29, 2015, PBF HOLDING COMPANY, LLC entered into a definitive Sale and Purchase Agreement with ExxonMobil Oil Corporation.

48.     PLAINTIFFS are informed and believe, and thereon allege, that on

July 1, 2016, PBF HOLDING COMPANY, LLC acquired from ExxonMobil Oil Corporation and its subsidiary, Mobil Pacific Pipe Line Company, the Refinery and related logistics assets (collectively, the "Torrance Acquisition"). Subsequent to the closing of the Torrance Acquisition, TORRANCE REFINING COMPANY LLC became a wholly-owned subsidiary of PBF HOLDING COMPANY, LLC. The aggregate purchase price for the Torrance Acquisition was approximately $521.4 million in cash after post-closing purchase price adjustments, plus final working capital of $450.6 million.

49.     PLAINTIFFS are informed and believe, and thereon allege that PBF HOLDING COMPANY, LLC with its consolidated subsidiaries, owns and operates oil refineries and related facilities in North America. PBF HOLDING COMPANY, LLC is a wholly-owned subsidiary of PBF ENERGY COMPANY, LLC. As of March 31, 2017, PBF ENERGY, INC is the sole managing member of PBF ENERGY COMPANY, LLC, and owns an equity interest of approximately 96.6%. PBF WESTERN REGION LLC and TORRANCE REFINING COMPANY LLC are PBF ENERGY COMPANY, LLC's principal operating subsidiaries and are all wholly-owned subsidiaries of PBF ENERGY, INC.

50.     PLAINTIFFS are informed and believe, and thereon allege that in connection with the acquisition of the Refinery and related logistics assets, PBF HOLDING COMPANY, LLC, assumed certain pre-existing environmental liabilities totaling $140,417,000 as of March 31, 2017 ($142,456,000 as of December 31, 2016), related to certain environmental remediation obligations to address existing soil and groundwater contamination and for monitoring and other clean-up activities. PBF HOLDING COMPANY, LLC assumed responsibility for certain specified environmental matters that occurred prior to the PBF HOLDING COMPANY, LLC's ownership of the several Notices of Violations issued by the Southern California Air Quality Management District ("SCAQMD") in various years before the acquisition.

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

12

SECOND AMENDED COMPLAINT

51.     PLAINTIFFS are informed and believe, and thereon allege, that in connection with the acquisition of the Refinery, PBF HOLDING COMPANY, LLC purchased a ten year, $100,000,000 environmental insurance policy to insure itself against unknown environmental liabilities.

52.     PLAINTIFFS are informed and believe, and thereon allege, that subsequent to the acquisition, PBF HOLDING COMPANY, LLC, along with its consolidated subsidiaries, received further Notices of Violation from the SCAQMD as well as from the City of Torrance and the City of Torrance Fire Department, related to operational violations, emission discharges and flaring incidents at the Refinery because PBF HOLDING COMPANY, LLC bears responsibility in whole or in part for those violations

53.     PLAINTIFFS are informed and believe, and thereon allege, that TRC; PBF ENERGY INC; PBF ENERGY WESTERN REGION, LLC; PBF HOLDING COMPANY, LLC; and PBF ENERGY COMPANY, LLC prepare consolidated filings for the United States Securities and Exchange Commission under the titular name of either PBF HOLDING COMPANY, LLC or PBE ENERGY, INC., utilizing the comingled funds and staff for creation of the necessary reports and filings.

54.     PLAINTIFFS are informed and believe, and thereon allege, that TRC, PBF ENERGY INC, PBF ENERGY WESTERN REGION, LLC, PBF HOLDING COMPANY, LLC, and PBF ENERGY COMPANY, LLC ("PBF"), also share and/or have shared the same offices, officers and employees, including but not limited to Erik Young, the current or former Senior Vice President and Chief Financial Officer of PBF, and Trecia Canty, the current or former Senior Vice President, General Counsel and Secretary for PBF. Similarly, Jeffrey Dill served as the Senior Vice President, General Counsel and Secretary for PBF from May 2010 to September 2015 and from March 2008 to May 2009 prior to being placed in his current title as President for PBF Energy Western Region, LLC.

55.     The true names and capacities of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFFS at this time, and PLAINTIFFS therefore sues such DOE Defendants under fictitious names. PLAINTIFFS is informed and believes, and thereon alleges, that each Defendant designated as a DOE is in some manner highly responsible for the occurrences alleged herein, and that PLAINTIFFS and CLASS MEMBERS' injuries and damages, as alleged herein, were proximately caused by the conduct of such DOE Defendants. PLAINTIFFS will seek leave of the court to amend this Complaint to allege their true names and capacities of such DOE Defendants when ascertained.

56.     PLAINTIFFS are informed and believe, and thereon allege, each of the DEFENDANTS were the agent, servant, employee, partner, aider and abettor, co-conspirator, joint venturer, predecessor and/or successor in interest of each of the remaining DEFENDANTS named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy, alter ego, joint venture, predecessor and/or successor relationship. Each of the DEFENDANTS has rendered substantial assistance and encouragement to the other DEFENDANTS, knowing that their conduct was wrongful and/or unlawful, and each of the DEFENDANTS has ratified and approved of the acts of each of the remaining DEFENDANTS.

57.     PLAINTIFFS are informed and believe, and thereon allege, that each of the DEFENDANTS is responsible for contamination to the soil and groundwater for the surrounding area.

58.     PLAINTIFFS are informed and believe, and thereon allege, that the contamination of the soil and groundwater caused by the DEFENDANTS includes volatile chemicals which intrude into the surrounding properties below the surface level of those properties and which volatize into soil gas that harmfully intrude into those same properties both above and below ground.

59.     PLAINTIFFS are informed and believe, and thereon allege, that these

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

14

SECOND AMENDED COMPLAINT

soil gas contaminants further intrude into the residences and businesses of the surrounding community exposing CLASS MEMBERS to harmful toxic substances on the land, and/or a lingering malicious odor, pollutants and noxious odors in the air invading CLASS MEMBERS' land, causing diminished use and enjoyment of their properties, pollution of the land and air in and around CLASS MEMBERS' properties, and/or adverse health effects.

60.    PLAINTIFFS are informed and believe, and thereon allege, that these soil gas contaminants include Benzene, a particularly harmful substance and known carcinogen.

61.    PLAINTIFFS are informed and believe, and thereon allege, that DEFENDANTS have known of the soil and groundwater contamination caused by the DEFENDANTS' operation of the Refinery and any attempts by the DEFENDANTS to remediate the contamination has failed to noticeably reduce the soil gas contaminants that intrude into the surrounding properties, including but not limited to Benzene, which is listed on California's Safe Drinking Water and Toxic Enforcement Act of 1986's list of chemicals known to the state to cause Cancer, Developmental Toxicity and Male Reproductive Toxicity.

62.    PLAINTIFFS are informed and believe, and thereon allege, that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, all DEFENDANTS, each acting as agents and/or employees, and/or under the direction and control of, each of the other DEFENDANTS, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control.

## **CLASS ACTION DESIGNATION**

63.    This action is appropriately suited for a Class Action because:

a.    The potential class is a significant number. Joinder of all effected persons individually would be impractical.

b.      This action involves common questions of law and fact to the potential class because the action focuses on DEFENDANTS' systematic course of improper maintenance, practices and policies, which effected.

c.      The claims of PLAINTIFFS are typical of the class because DEFENDANTS subjected all residents and commuting employees within 3 miles to identical exposure to toxic substances.

d.      PLAINTIFFS are able to fairly and adequately protect the interests of all members of the class because it is in their best interests to prosecute the claims alleged herein to obtain greatest award possible.

**FIRST CAUSE OF ACTION**

**Negligence**

**(Against all DEFENDANTS)**

64.    PLAINTIFFS incorporate and re-allege, as though fully set forth above, each of the preceding paragraphs.

65.    PLAINTIFFS are informed and believe, and thereon allege, that at the time of the explosion, EXXON owned, operated, controlled, managed, and/or maintained the Refinery, as described above.

66.    PLAINTIFFS are informed and believe, and thereon allege, that shortly following the restart of the Refinery, Defendant PBF owned, operated, controlled, managed, and/or maintained the Torrance Refinery, as described above.

67.    At all relevant times, DEFENDANTS were required to exercise the utmost care and diligence in the ownership, operation, management, supervision, inspection, maintenance, repair, and/or control of the Refinery, so as to not cause harm to public property, the environment, public resources, public health, and/or the comfortable use and enjoyment of life and liberty by the public.

68.    At all relevant times, DEFENDANTS failed to exercise care in its ownership, operation, management, supervision, inspection, maintenance, repair, and/or control of the Refinery, including, but not limited to, failing to properly

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

16

SECOND AMENDED COMPLAINT

inspect and replace equipment, continued use of dangerous MHF near volatile processing units, and failing to comply with applicable safety standards.

69.    As a further direct and legal result of the aforesaid premises, PLAINTIFFS have suffered damages, including but not limited to costs for emergency response, clean up of debris, medical bills, and loss of use and enjoyment of property in an amount, according to proof at trial, beyond the jurisdictional minimum of this Court.

70.    As a further direct and legal result of the aforesaid allegations, PLAINTIFFS' properties have suffered a loss of fair market property values as a result of the February 18, 2015 explosion and the continued release of toxins and noise into the atmosphere throughout the operation of the Refinery.

71.    As a further direct and legal result of the aforesaid allegations, PLAINTIFFS have suffered damage to environmental resources.

72.    As a further direct and legal result of the aforesaid allegations, PLAINTIFFS have suffered harm to the public health, obstruction of the free passage and use of property of public property, and/or the interference with the comfortable enjoyment of life or property.

73.    PLAINTIFFS did not consent to DEFENDANTS' conduct, which required and continues to require the public to shelter-in-place for extended periods to avoid immediate harm and has created long-lasting, continuing, and/or permanent harm to public health, the environment, and property valuations.

74.    The wrongful acts of DEFENDANTS were done maliciously, oppressively, fraudulently, and in conscious disregard of the safety and health of the community.  PLAINTIFFS are entitled to punitive and exemplary damages in an amount to be ascertained according the proof, which is appropriate to punish or set an example of Defendant and deter such behavior.

75.    As a direct and legal cause of the wrongful acts herein set forth, PLAINTIFFS suffered damages as described above in the preceding paragraphs.

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

17

SECOND AMENDED COMPLAINT

## SECOND CAUSE OF ACTION

### Strict Liability – Ultrahazardous Activity

### (Against all DEFENDANTS)

76.     PLAINTIFFS incorporate and re-allege, as though fully set forth above, each of the preceding paragraphs.

77.     At all times relevant herein, DEFENDANTS' activities in operating, controlling, managing, and/or maintaining the Refinery constitutes an ultrahazardous and abnormally dangerous activity, as maintenance of an outdated Refinery, particularly one using MHF, in a densely populated area poses serious risk of harm, regardless of the amount of care exercised.

78.     As alleged herein, PLAINTIFFS were seriously harmed which was a direct result of DEFENDANTS' ultrahazardous activities in operating and maintaining the Refinery.

79.     PLAINTIFFS' harm, as outlined herein, was the kind of harm that would be anticipated as a result of the risk created by DEFENDANTS' abnormally dangerous activities, i.e., maintenance of an oil refinery, especially an old, dangerous, and poorly maintained refinery using MHF, in a densely populated area.

80.     DEFENDANTS' ultrahazardous activities resulted in an explosion that emitted debris, ash, toxins, smoke, and other dangerous chemicals into the air, and was therefore a substantial factor causing PLAINTIFFS' harm.

81.     As a direct and legal cause of the wrongful acts herein set forth, PLAINTIFFS suffered damages as described above in the preceding paragraphs.

## THIRD CAUSE OF ACTION

### Private Nuisance - Continuing

### (Against all DEFENDANTS)

82.     PLAINTIFFS incorporate and re-allege, as though fully set forth above, each of the preceding paragraphs.

83.     PLAINTIFFS owned, leased, occupied, and/or controlled property at

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

18                           SECOND AMENDED COMPLAINT

or near the Refinery. PLAINTIFFS have the inalienable right to own, enjoy, and use its property without interference by DEFENDANTS' conduct.

84.     PLAINTIFFS continue to own, lease, occupy, and/or controlled property at or near the Refinery. PLAINTIFFS have the inalienable right to own, enjoy, and use their properties without interference by DEFENDANTS' conduct.

85.     DEFENDANTS by reason of their failure to exercise care in their operation and maintenance of the refinery, created a condition that harmed PLAINTIFFS and interfered with PLAINTIFFS' free use and enjoyment of their land, as PLAINTIFFS, along with numerous other neighbors, have suffered the loss of the use and enjoyment of their properties, in the form of damage to buildings and personal property and/or a significant decrease in the value of the properties, and/or exposure to an array of toxic substances on the land, and/or a lingering malicious odor, noise, soot, ash, and dust in the air.

86.     An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by DEFENDANTS.

87.     PLAINTIFFS did not consent to the DEFENDANTS' conduct. To the extent PLAINTIFFS gave any express or implied permission for the maintenance of an oil refinery near their properties, such permission extended only to a properly maintained, up-to-date, and safe refinery, and DEFENDANTS exceeded the scope of any such consent by operating a poorly maintained, dangerous, aging, and ultimately faulty refinery near the PLAINTIFFS.

88.     The aforementioned conduct of Defendant constitutes a nuisance within the meaning of section 3479 of the Civil Code in that it is injurious and/or offensive to the sense of the PLAINTIFFS and/or the unreasonably interferes with the conformable enjoyment of its property and/or unlawfully obstructs the free use, in the customary manner, of PLAINTIFFS' properties.

89.     The seriousness of the injuries to PLAINTIFFS outweighs the social utility of DEFENDANTS' conduct, as DEFENDANTS could have taken steps to

prevent the harm while still refining oil.

90.     As a direct and legal cause of the wrongful acts herein set forth,

PLAINTIFFS suffered damages as described above in the preceding paragraphs.

## FOURTH CAUSE OF ACTION

### Private Nuisance Permanent

### (Against all DEFENDANTS)

91.     PLAINTIFFS incorporate and re-allege, as though fully set forth

above, each of the preceding paragraphs.

92.     PLAINTIFFS owned, leased, occupied, and or controlled the

properties.

93.     DEFENDANTS by reason of their failure to exercise care in its

operation and maintenance of the refinery, creates a condition that permanently

harmed PLAINTIFFS and interfered with PLAINTIFFS' free use and enjoyment of

their land, as PLAINTIFFS, along with numerous other neighbors, have suffered

the loss of the use and enjoyment of their properties, in the form of damage to

buildings and personal property and/or a significant decrease in the value of the

property, and/or exposure to an array of toxic substances on the land, and/or a

lingering malicious odor, noise, soot, ash, and dust in the air.

94.     An ordinary person of reasonable sensibilities would reasonably be

annoyed and/or disturbed by the conditions created by DEFENDANTS.

95.     PLAINTIFFS did not consent to the DEFENDANTS' conduct, which

was a substantial factor in causing PLAINTIFFS' harm.

96.     The seriousness of the harm to PLAINTIFFS outweighs the public

benefit of DEFENDANTS' conduct.

97.     As a direct and legal cause of the wrongful acts herein set forth,

PLAINTIFFS suffered damages as described above in the preceding paragraphs.

//

//

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

20

SECOND AMENDED COMPLAINT

# FIFTH CAUSE OF ACTION

## Public Nuisance - Continuing

### (Against all DEFENDANTS)

98.   PLAINTIFFS incorporate and re-allege, as though fully set forth above, each of the preceding paragraphs.

99.   DEFENDANTS by reason of their failure to exercise care in operation and maintenance of the Refinery, created a condition that harmed the public and interfered with the public's free use and enjoyment of public land, as PLAINTIFFS, along with numerous residents and surrounding neighbors, have suffered the loss of the use and enjoyment of their properties, in the form of damage to buildings and personal property and/or a significant decrease in the value of the property, and/or exposure to an array of toxic substances on the land, and/or a lingering malicious odor, noise, soot, ash, and dust in the air.

100.   An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by DEFENDANTS.

101.   The conditions affected a substantial number of people at the same time.

102.   The seriousness of the harm outweighs the social utility of DEFENDANTS' conduct.

103.   PLAINTIFFS did not consent to DEFENDANTS' conduct.

104.   As direct and legal cause of the wrongful acts herein set forth, PLAINTIFF suffered damages as described above in the preceding paragraphs.

# SIXTH CAUSE OF ACTION

## Public Nuisance – Permanent

### (Against all DEFENDANTS)

105.   PLAINTIFFS incorporate and re-allege, as though fully set forth above, each of the preceding paragraphs.

106.   DEFENDANTS by reason of their failure to exercise care in operation

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

and maintenance of the Refinery, created a condition that harmed the public and interfered with the public's free use and enjoyment of public land, as PLAINTIFFS, along with numerous residents and surrounding neighbors, have suffered the loss of the use and enjoyment of their properties, in the form of damage to buildings and personal property and/or a significant decrease in the value of the property, and/or exposure to an array of toxic substances on the land, and/or a lingering malicious odor, noise, soot, ash, and dust in the air.

107. An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by DEFENDANTS.

108. The conditions affected a substantial number of people at the same time.

109. The seriousness of the harm outweighs the social utility of DEFENDANTS' conduct.

110. PLAINTIFFS did not consent to DEFENDANTS' conduct.

111. As direct and legal cause of the wrongful acts herein set forth, PLAINTIFF suffered damages as described above in the preceding paragraphs.

## SEVENTH CAUSE OF ACTION

### Trespass

### (Against all DEFENDANTS)

112. PLAINTIFFS incorporate and re-allege, as though fully set forth above, each of the preceding paragraphs.

113. DEFENDANTS were engaged in an extrahazardous activity and/or intentionally, recklessly, and/or negligently caused an array of toxic substances, a lingering malicious odor, noise, soot, ash, and/or dust to enter PLAINTIFFS' properties.

114. PLAINTIFFS did not give permission for this direct and/or indirect entry.

115. PLAINTIFFS, along with numerous residents and surrounding

neighbors, have been harmed by DEFENDANTS' conduct, as PLAINTIFFS' have suffered the loss of the use and enjoyment of their properties, in the form of damage to buildings and personal property and/or a significant decrease in the value of the property, and/or exposure to an array of toxic substances on the land, and/or a lingering malicious odor, noise, soot, ash, and dust in the air.

116.   An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by DEFENDANTS.

117.   As direct and legal cause of the wrongful acts herein set forth, PLAINTIFF suffered damages as described above in the preceding paragraphs.

## **DAMAGES AND OTHER RELIEF**

118.   In addition to the relief requested herein and in the Prayer for Relief below, PLAINTIFFS allege that as a direct and proximate result of the unlawful actions of DEFENDANTS, PLAINTIFFS and CLASS MEMBERS have suffered, and continue to suffer, from injuries to themselves and/or to personal property in amounts as yet unascertained, but subject to proof at trial, and within the jurisdiction of this Court.

119.   PLAINTIFFS and the CLASS MEMBERS seek injunctive relief and equitable relief regarding DEFENDANTS' past and ongoing unlawful conduct as more particularly alleged herein which includes the activities and/or inaction which give rise to the causes of cation for nuisance and trespass. The injunctive and equitable relief includes abatement of DEFENDANTS' unlawful activities and such actions and inactions which give rise to the claims alleged herein and the risk posed to the PLAINTIFFS and the CLASS MEMBERS, as well as the public.

120.   PLAINTIFFS and the CLASS MEMBERS also seek injunctive or other equitable relief to include abatement and/or monitoring necessary and appropriate as a result of DEFENDANTS' actions and inactions as more particularly alleged herein. PLAINTIFFS and the CLASS MEMBERS are informed and believe and based thereon allege that the monitoring of the site should include

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

23                                      SECOND AMENDED COMPLAINT

sampling because in order to further delineate and confirm the uncontested offsite migration of COCs emanating from the Refinery property, shallow groundwaters, soil gas and indoor air need to be sampled and monitored. This would involve multiple monitoring well (groundwater and soil gas) installations and a comprehensive indoor air sampling program, and also to continue the sampling of shallow groundwater and soil gas in the area. All sampling would need to be executed in a step-out fashion away from the Refinery property towards and into the residential neighborhoods. This sampling should be continuous based upon the risk that the Refinery as operated and DEFENDANTS' actions and inactions, pose to nearby residential neighborhoods both in the short-term and long-term. PLAINTIFFS and the CLASS MEMBERS are informed and believe and based thereon allege that the most recent depiction of the extents of the Benzene and MTBE groundwater plume as defined by the AMEC (2018) at the southeastern corner of the Refinery property as delineated by the Refinery and its consultants. PLAINTIFFS and the CLASS MEMBERS are informed and believe and based thereon allege that the Refinery and its consultants are presently monitoring groundwater at only a few locations within the Gage Aquifer. PLAINTIFFS and the CLASS MEMBERS are informed and believe and based thereon allege that a review of the most current monitoring report (AMEC, 2018) indicates a lack of shallow soil gas and indoor air monitoring, which are needed to evaluate any offsite migration of COCs within the Del Amo Residential Area. PLAINTIFFS and the CLASS MEMBERS are informed and believe and based thereon allege that the Benzene plume in the Gage Aquifer taken from the most current monitoring report (AMEC, 2018), shows the extent of the Benzene plume into the Del Amo Residential Area has been delineated by the Refinery and its consultants in a manner that minimizes the extent of the COCs' migration into the residential area. PLAINTIFFS and the CLASS MEMBERS are informed and believe and based thereon allege the report shows that the interpolation of the isocontours in the

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

24                                          SECOND AMENDED COMPLAINT

vicinity of IV-02R and IV-01R has been conservatively drawn to minimize extents of the Benzene plume. For example, Benzene in well IV-02R has been detected at 2,300 ug/L and 690 ug/L at well IV-01R, respectively. South of these wells, 2 other wells indicate non-detect measurements for Benzene, well V-07R which is about 1,000 feet and IV-02R, which is locate further south about 1,500 feet away.

121.   PLAINTIFFS and the CLASS MEMBERS are informed and believe and based thereon allege that the COC plume boundary in the southwest is poorly defined, that there is a lack of monitoring points beyond the property boundary in this area and that it is highly likely that the COC plume extends offsite in the groundwater, soil gas and possibly indoor air, which given this area is a residential neighborhood, requires that groundwater, soil gas and indoor air sampling and monitoring should be conducted over time.

122.   As a direct and proximate result of the unlawful actions of DEFENDANTS, and specifically due to PLAINTIFFS and CLASS MEMBERS' significant and extensive exposure to one or more toxic substances, it is reasonably certain that PLAINTIFFS and CLASS MEMBERS suffer a significantly increased risk of contracting a serious injury or latent disease relative to their risk had PLAINTIFFS and CLASS MEMBERS not been exposed to these toxic substances. The diseases that may result from the exposure, such as cancer, are serious and there is a medical benefit from early detection and diagnosis.

123.   This increased risk makes periodic diagnostic medical examinations reasonably necessary and certain. Monitoring and testing procedures exist which make the early detection and treatment of injuries or disease possible and beneficial. Such monitoring and testing procedures are reasonable, entitling PLAINTIFFS and CLASS MEMBERS to damages and injunctive relief, including the reasonable costs for future medical monitoring in amounts as yet unascertained, but subject to proof at trial, and within the jurisdiction of this Court.

124.   The increased susceptibility to injuries and irreparable threat to the PLAINTIFFS and CLASS MEMBERS' health resulting from their exposure to one or more hazardous substances can only be mitigated or addressed by the creation of a medical monitoring fund to provide for a medical monitoring program, including:

a.   Notifying all persons who have been exposed of the potential harm from the exposure;

b.   Gathering and forwarding to treating physicians and other appropriate medical and health professionals information related to the identification, diagnosis and treatment of injuries which may result from exposure(s); and

c.   Aiding in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring of exposed persons including PLAINTIFFS and CLASS MEMBERS.

125.   PLAINTIFFS and CLASS MEMBERS have no adequate remedy at law in that monetary damages alone do not compensate for the continuing nature of the harm to them, and a monitoring program which notifies them of possible injury and aids in their treatment can prevent the greater harms which may not occur immediately and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur or become worse.

126.   Without a court-approved medical monitoring program, PLAINTIFFS and CLASS MEMBERS might not receive prompt medical care which could detect and prolong their productive lives, increase prospects for improvement and minimize disability.

## **PRAYER FOR RELIEF**

**WHEREFORE**, PLAINTIFFS, individually and on behalf of all other persons similarly situated, respectfully prays for relief against DEFENDANTS and DOES 1 through 100, inclusive, and each of them, as follows:

1.     For compensatory damages, including but not limited to damages, costs and expenses in connection with any future medical testing, monitoring, or diagnosis of PLAINTIFFS and CLASS MEMBERS related to their exposure to toxic substances, in an amount to be ascertained at trial;

2.     For equitable relief including injunctive relief which includes abatement of DEFENDANTS' conduct giving rise to the claims alleged herein, including sampling and monitoring of shallow groundwaters, soil gas and indoor air, as well as medical monitoring of PLAINTIFFS and CLASS MEMBERS;

3.     For DEFENDANTS' wrongful use of the properties including by trespass, the greater of the reasonable rental value of the properties or the benefits obtained by the DEFENDANTS wrongfully occupying the properties by reason of the wrongful occupations;

4.     For economic damages due to emergency response and permitting costs according to proof;

5.     For past and future damages related to environmental remediation and incidental costs according to proof;

6.     For diminution in property value according to proof;

7.     For damages related to harm to public health, obstruction of the free passage and use of property of public property, and/or the interference with the comfortable enjoyment of life or property according to proof;

8.     For pre- and post-judgment interest on all damages as allowed by the law;

9.     For attorneys' and expert/consultant fees under existing law;

10.    For punitive damages in an amount according to proof or taking some measure to ensure that an example is made of DEFENDANTS to deter similar future conduct;

11.    For injunctive relief;

12.    For costs of suit incurred herein; and

13.    For such other and future relief as the Court may deem just and proper.

DATED: July 9, 2018

Respectfully submitted,

**MATERN LAW GROUP, PC**

By:   /s/ Matthew J. Matern

Matthew J. Matern
Tagore Subramaniam
Daniel J. Bass
Attorneys for Plaintiffs ARNOLD GOLDSTEIN, JOHN COVAS, GISELA JANETTE LA BELLA, and HANY YOUSSEF individually, and on behalf of others similarly situated

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

28

SECOND AMENDED COMPLAINT

## **DEMAND FOR JURY TRIAL**

PLAINTIFFS hereby demand a jury trial with respect to all issues triable of right by jury.

DATED: July 9, 2018                     Respectfully submitted,

**MATERN LAW GROUP, PC**

By:   /s/ Matthew J. Matern

Matthew J. Matern
Tagore Subramaniam
Daniel J. Bass
Attorneys for Plaintiffs ARNOLD GOLDSTEIN, JOHN COVAS, GISELA JANETTE LA BELLA, and HANY YOUSSEF individually, and on behalf of others similarly situated

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

29                          SECOND AMENDED COMPLAINT