**MATERN LAW GROUP, PC**
Matthew J. MATERN (SBN 159798)
mmatern@maternlawgroup.com
JOSHUA D. BOXER (SBN 226712)
jboxer@maternlawgroup.com
Tagore Subramaniam (SBN 280126)
tagore@maternlawgroup.com
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
Telephone:  (310) 531-1900
Facsimile:  (310) 531-1901

*Attorneys for Jose Navarro*
*and the certified classes and for*
*Arnold Goldstein, Gisela Janette La Bella,*
*and Hany Youssef.*

MATTHEW K. EDLING (SBN 250940)
matt@sheredling.com
ADAM M. SHAPIRO (SBN 267429)
adam@sheredling.com
STEPHANIE D. BIEHL (SBN 306777)
stephanie@sheredling.com
**SHER EDLING LLP**
100 Montgomery St., Suite 1410
San Francisco, CA 94104
Tel:   (628) 231-2500
Fax:   (628) 231-2929

*Attorneys for Jose Navarro*
*and the certified classes.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE NAVARRO, individually and on behalf of all others similarly situated, and ARNOLD GOLDSTEIN, GISELA JANETTE LA BELLA, and HANY YOUSSEF, | CASE NO.: 2:17-cv-02477-DSF (SKx) |
| Plaintiffs, | **THIRD AMENDED COMPLAINT** |
| vs. | |
| Defendants EXXON MOBIL CORPORATION, a New Jersey corporation; TORRANCE REFINING COMPANY, LLC, a Delaware Limited Liability Company; | |
| Defendants | |

MATERN LAW GROUP
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN
BEACH, CA 90266

1                    THIRD AMENDED COMPLAINT

PLAINTIFF JOSE NAVARRO, on behalf of himself and others similarly situated, and PLAINTIFFS ARNOLD GOLDSTEIN, GISELA JANETTE LA BELLA, and HANY YOUSSEF ("PLAINTIFFS") bring this action against Defendants EXXON MOBIL CORPORATION, ("EXXON"); and TORRANCE REFINING COMPANY, LLC ("TRC") (collectively "DEFENDANTS"). PLAINTIFFS aver the following upon personal knowledge and information and belief based upon the investigation of counsel as to all other facts alleged in the Complaint:

1.     This case represents an example of a corporate choice to place profits over public safety. It arises from the years of neglect, lax oversight, and corporate indifference to operating standards, and the failure to exercise necessary diligence, that caused numerous leaks and other releases of dangerous pollutants into the air and the subsurface.

2.     Jose Navarro brings this case on behalf of himself and a class of individuals impacted by the subsurface contamination emanating from the Torrance Refinery (the "Refinery"). Millions of gallons of petroleum have been released from the Refinery into the subsurface. To date, over 23 million gallons of free-phase hydrocarbon product ("FHP") have been extracted from the aquifers beneath the Refinery, and that represents only a fraction of the amount that remains in the ground. Benzene and other volatile organic compounds have volatized into gases and vapors ("soil gas") in the areas above this plume and have migrated into the structures above. This ongoing contamination poses an unacceptable health risk to the residents in the class area.

3.     Navarro also brings this action individually and on behalf of individuals impacted by air pollution from the Refinery. DEFENDANTS have and continue to emit diesel particulate matter, hexavalent chromium, and volatile organic compounds, including Benzene, into the air, resulting in a plume of toxic substances blanketing the community around the Refinery. This plume has created

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

2                          THIRD AMENDED COMPLAINT

an unacceptable health risk to the community.

4.     Additionally, Plaintiffs Goldstein, La Bella, and Youssef bring claims on behalf of themselves. These claims are separate and apart from the claims asserted by Navarro on behalf of the classes certified by the Court.

## JURISDICTION AND VENUE

5.     The District Court of the Central District of California has jurisdiction in this matter because PLAINTIFFS are residents of the State of California, and DEFENDANTS are qualified to do business in California and regularly conduct business in California. DEFENDANTS removed this matter from the Superior Court of the State of California under the Class Action Fairness Act and Plaintiffs did not seek remand. No federal question is at issue because the claims are based solely on California law.

6.     Venue is proper in this judicial district and the County of Los Angeles, California because PLAINTIFFS, and other persons similarly situated, reside in the County of Los Angeles, DEFENDANTS maintain offices and facilities and transact business in the County of Los Angeles, and because DEFENDANTS' illegal and wrongful actions which are the subject of this action occurred to PLAINTIFFS, and other persons similarly situated, in the County of Los Angeles.

## PLAINTIFFS

7.     Plaintiff JOSE NAVARRO owns the property located at 2205 Del Amo Boulevard, Torrance, California, where he currently resides. Mr. Navarro purchased the property in 1998 and was not warned about environmental conditions on the property before the purchase. Mr. Navarro's property has been impacted by hazardous air emissions and subsurface contamination emanating from the Refinery. Contamination from the Refinery has interfered with Mr. Navarro's use and enjoyment of his property. Environmental sampling performed at Mr. Navarro's property in 2019 detected Benzene in the soil vapor at levels of 17,000 µg/m3 at 5 feet below ground surface, several orders of magnitude above

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

3                                                  THIRD AMENDED COMPLAINT

the environmental screening level ("ESL") of 3.2 µg/m3. Benzene was also detected in the air inside Mr. Navarro's home at concentrations of over ten times the applicable ESL. Mr. Navarro frequently smells gasoline odors inside and outside his home.

8.    Navarro brings this case as a class action on behalf of himself and all other similarly situated persons who:

a.    Currently own real property within the boundaries of Zones A, B, and C of the plume maps attached to the declaration of W. Richard Laton (Dkt. 191-5 pp. 24-25 (Laton Decl. Exs. 11a-b)) (the "Ground Class Area") and who occupy or have a possessory interest in that property (the "Ground Class").

b.    Currently own or lease real property within the boundaries of the Air Class Area, and who currently occupy said property. The term "Air Class Area" means locations where air emissions currently exceed safe levels or that are known to register as malodorous, which locations are identified in the declaration of James Clark (Dkt Nos. 214-1, 214-4 Ex. 8, Figure 23) (the "Air Class").

9.    Plaintiff ARNOLD GOLDSTEIN, is a male resident of the State of California and the City of Torrance as well as a small business owner in the City of Torrance, who has suffered physical and economic harm as a result of DEFENDANTS' actions and inactions.

10.    Plaintiff GISELA JANETTE LA BELLA, is a female resident of the State of California and is employed within the City of Torrance, who has suffered physical and economic harm as a result of DEFENDANTS' actions and inactions.

11.    Plaintiff HANY YOUSSEF is a male resident of the State of California who previously lived in the Del Amo Boulevard neighborhood, which directly borders the Refinery to the South.  YOUSSEF has suffered economic harm as a result of DEFENDANTS' actions and inactions, including but not limited to

damage to his former property due to DEFENDANTS' release of harmful chemicals, as well as delays in construction of an accessory dwelling unit ("ADU") for rental income and/or sale of his home, due to a fear of potential disclosures and liabilities to potential tenants of that ADU and/or prospective buyers, all arising from the groundwater contamination caused by DEFENDANTS.

## **DEFENDANTS**

12.     EXXON MOBIL CORPORATION is, and at all times relevant hereto was, a New Jersey corporation organized and existing under the laws of the State of New Jersey.  EXXON MOBIL CORPORATION is authorized to conduct business in the State of California and does conduct business in the State of California. Specifically, defendant EXXON MOBIL CORPORATION maintains offices and facilities and conducts business in and engages in illegal practices in the County of Los Angeles, State of California.

13.     TORRANCE REFINING COMPANY, LLC is, and at all times relevant hereto was, a Delaware Limited Liability Company organized and existing under the laws of the State of Delaware. Defendant TORRANCE REFINING COMPANY, LLC is authorized to conduct business in the State of California and does conduct business in the State of California. Specifically, defendant TORRANCE REFINING COMPANY, LLC maintains offices and facilities and conducts business in and engages in illegal practices in the County of Los Angeles, State of California.

14.     PLAINTIFFS are informed and believe, and thereon allege, each of the DEFENDANTS was the agent, servant, employee, partner, aider and abettor, co-conspirator, joint venturer, predecessor and/or successor in interest of each of the remaining DEFENDANTS named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy, alter ego, joint venture, predecessor and/or successor relationship. Each of the DEFENDANTS has rendered substantial assistance and encouragement

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

THIRD AMENDED COMPLAINT

1  to the other DEFENDANTS, knowing that their conduct was wrongful and/or

2  unlawful, and each of the DEFENDANTS has ratified and approved of the acts of

3  each of the remaining DEFENDANTS.

4  **CLASS ALLEGATIONS**

5  **A.   Subsurface Contamination from the Refinery Poses an Unacceptable
      Health Risk to the Ground Class**

6

7          15.    DEFENDANTS negligently and/or recklessly released massive

8  amounts of petroleum products from the Refinery into the subsurface, resulting in

9  the migration of harmful contaminants, including Benzene, from the Refinery to the

10  Ground Class Area. Contamination is now present at levels that pose unacceptable

11  health risks to the Ground Class.

12          16.    The Refinery has been the subject of four Cleanup and Abatement

13  Orders from the Los Angeles Regional Water Quality Control Board since 1985,

14  requiring the investigation and remediation of uncontrolled releases from the

15  facility. High levels of contamination, including FHP, have been documented at the

16  Refinery property line adjoining the northern boundary and beneath the Ground

17  Class Area.

18          17.    Data collected by the Refinery's consultants in 2008 demonstrates that

19  a vapor plume is emanating from the southeast corner of the Refinery to the south

20  into an area of commercial buildings. DEFENDANTS failed to conduct any

21  additional soil vapor sampling the Ground Class Area since 2008, and their 2008

22  data does not reflect the current contamination in Ground Class Area.

23          18.    In or around 2008, as a result of the aforementioned environmental

24  sampling, EXXON purchased 12 properties to the east of the Ground Class Area.

25  Exxon also offered a price protection program for nearby properties, whereby

26  Exxon offered to provide assistance in marketing the homes for sale, among other

27  things.

28          19.    In 2018 and 2019, PLAINTIFFS' consultant, Terrax, conducted

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

6                    THIRD AMENDED COMPLAINT

additional sampling of soil vapor, ambient air, and indoor air to supplement the Refinery's data. Terrax sampled a total of 13 private residences for indoor air quality: ten were sampled in 2018 and six in 2019 (three of the samples were taken at residences that were sampled in 2018). Terrax also sampled soil vapor at seven private residences and collected ambient air samples at two residences. The concentrations of contaminants in many of the samples exceeded ESLs prescribed by state and federal regulators, in some cases by several orders of magnitude.

20.     The Terrax sampling results demonstrate the presence of high levels of Benzene in the soil vapor beneath the properties in the Ground Class Area and indicate that contamination has continued to migrate unabated from the Refinery beyond what was mapped in 2008 by the Refinery's consultants.

21.     The data collected by Terrax in 2019 also demonstrates that all private residences sampled for indoor air quality had at least one (1) exceedance of 10 times the applicable ESL for Benzene. These exceedances pose an immediate unsafe condition that presents a health risk to persons within the private residences.

22.     Interim remediation of the uncontrolled releases at the Refinery began by at least 1986. As of 2020, over 23 million gallons of FHP had been extracted from the aquifers underlying the Refinery. Since 1988, over 9 billion gallons of contaminated groundwater in the area have been extracted and treated. These interim actions by DEFENDANTS have not resulted in any reduction of the area of the FHP plume, which is the primary source of contaminants of concern that are migrating from the Refinery.

23.     The Refinery's interim remedial actions were not designed to and do not impact the contamination underlying the Ground Class Area. A soil vapor extraction system was installed by EXXON near the intersection of Del Amo Boulevard and Van Ness Avenue in 2014. However, DEFENDANTS have not undertaken any remedial actions to address contaminants in soil vapor over the vast majority of the Ground Class Area. Essentially all of the Ground Class Area is

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

7                          THIRD AMENDED COMPLAINT

outside the area subject to the remedial measures conducted near the intersection of Del Amo Boulevard and Van Ness.

24. TRC has not taken any remedial actions based on the 2018/2019 Terrax sampling results that they were provided.

25. In order to address the contamination from the Refinery in the Ground Class Area it will be necessary to implement remedial measures both at the Refinery ("on-Site Remedial Actions") and at the properties in the Ground Class Area ("off-Site Remedial Actions"). On-Site Remedial Actions are necessary to eliminate the sources of contamination at the Refinery that continue to migrate off-Site and contribute to contamination in the Ground Class Area. Off-Site Remedial Actions are necessary to address the contamination that has already migrated into the Ground Class Area from the Refinery.

**B.    Air Pollution from the Refinery Poses an Unacceptable Health Risk to the Air Class**

26. The Refinery has and continues to release air pollution that has resulted in plumes of diesel emissions, volatile organic compounds (VOCs), and toxic metals that are blanketing the community around the Refinery. All of these plumes put the community at risk. In combination, these plumes create a health risk to the community that is unacceptable.

27. The primary contaminants of concern emitted into the air by the Refinery are hexavalent chromium, diesel particulate matter (DPM), and benzene. Pursuant to Proposition 65, hexavalent chromium is listed as a carcinogen and reproductive toxin; and DPM and Benzene are listed as carcinogens under Proposition 65. All three contaminants have been identified as toxic air contaminants by the California Air Resources Board.

28. Hexavalent chromium emissions from the Refinery have increased from 0.367 lbs in 2016 to 1.485 lbs in 2019. As a result, hexavalent chromium is now the primary risk driver for the Air Class. The four-fold increase in hexavalent

chromium emissions represents a significant increase in the risk to community members since TRC took over the Refinery and far exceeds the goal set forth in TRC's 2020 Voluntary Risk Reduction Plan.

29.     The impacts of the Refinery's emission of these contaminants are additive in nature. Here, the sum of the risks for the latest estimates of the Refinery's emissions of hexavalent chromium, DPM, and benzene will produce an excess cancer risk greater than 10 in 1,000,000 in the surrounding community. Persons who reside or work in the Air Class Area for extended periods of time are at elevated risks of experiencing adverse health effects.

30.     To reduce the impacts of the emissions on the residents in the Air Class, and to keep the harmful plume of contaminants within the fenceline of the Refinery, TRC should reduce annual emissions of hexavalent chromium to a maximum of 0.1 lbs., annual emissions of diesel particulate matter to a maximum of 42 lbs., and annual emissions of benzene to a maximum of 2,700 lbs.

**C.     The Ground Class and Air Class Are Suited for Class Action Treatment**

31.     This action is suited for class action treatment since a well-defined community of interest in the litigation exists and the class is easily ascertainable. The aforementioned class definitions identify a group of unnamed plaintiffs by a set of shared characteristics adequate for an individual to identify him or herself as a member of the group with the right to recover. The CLASS MEMBERS may receive proper and sufficient notice directly or through publication.

32.     Commonality and Predominance: DEFENDANTS' conduct and the scope of its impact raise common issues of fact and law among all members of the classes, and common questions of law or fact are substantially similar and predominate over questions that may affect only individual CLASS MEMBERS. DEFENDANTS' unreasonable repairs, operation, and maintenance of the Refinery is a common nucleus of operative fact linking every CLASS MEMBER. Each member of the proposed Air Class and Ground Class claims that

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

9                          THIRD AMENDED COMPLAINT

DEFENDANTS negligently repaired, operated and/or maintained the Refinery, which resulted in the release of harmful pollutants invading CLASS MEMBERS' land, causing diminished use and enjoyment of their properties, and/or pollution of the land and air in and around CLASS MEMBERS' properties. Additionally, DEFENDANTS intentionally, recklessly, and/or negligently failed to abate these pollutants. While slight variations in individual damages may occur, common questions of law and fact regarding DEFENDANTS' liability substantially predominate over any questions affecting only individual CLASS MEMBERS such that class treatment should be permitted for the fair and efficient adjudication of this controversy.

33.     Numerosity: The members of both the Ground Class and the Air Class are so numerous that joinder of all members would be impracticable. There are approximately 93 residences and 21 commercial properties that fall within the boundaries of Ground Class. There are hundreds of residences that fall within the boundaries of Air Class.

34.     Typicality: Navarro's claims are typical of the claims of the CLASS MEMBERS. Navarro and all putative class members were and are subject to the same unsafe conditions and pollutants by the DEFENDANTS' refinery. DEFENDANTS' course of conduct in violation of law as alleged herein caused Navarro and CLASS MEMBERS to sustain the same or similar injuries and damages.

35.     Adequacy of Representation: Navarro does not have any conflicts of interest with other CLASS MEMBERS due to the great degree of commonality of the claims, and he will prosecute the case vigorously on behalf of the class. Counsel representing Navarro and the class are competent and experienced in litigating large class actions. Navarro will fairly and adequately represent and protect the interests of the CLASS MEMBERS. Thus, Navarro is committed to deliver relief for the class and has retained experienced class action counsel.

36.     Superiority of class action: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all CLASS MEMBERS is not practicable, and questions of law and fact common to the class predominate over any questions affecting only individual members of the class. Each CLASS MEMBER has been damaged and is entitled to recovery as a direct result of DEFENDANTS' conduct with respect to the unsafe conditions and pollutants caused by the DEFENDANTS' refinery. Moreover, the complexity of this litigation and potential of recovery for individuals renders separate adjudication impracticable. Thus, class action treatment provides optimal resolution of all the CLASS MEMBERS claims in a manner most efficient and economical for both the parties and the judicial system.

37.     Additionally, the Air Class was properly certified pursuant to Federal Rule of Civil Procedure 23(b)(2) because TRC has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

**ALLEGATIONS REGARDING GOLDSTEIN, LA BELLA, AND YOUSSEF**

**A.     The 2015 Explosion**

38.     On February 11, 2015 the Fluid Catalytic Cracking ("FCC") expander at the Refinery, a unit that converts oil to gasoline by "cracking" the large oil molecules apart into smaller ones, began experiencing vibrations that continued to worsen over the course of several days.

39.     On February 16, 2015 the expander vibrations exceeded a specified limit which caused the FCC unit to switch to a "park" mode by the preset logic controls.

40.     PLAINTIFFS are informed and believe that in the early morning of February 18, 2015 maintenance workers who were dispatched to the FCC expander became concerned about the amount of steam coming from the FCC expander. As the steam reduced, however, hydrogen sulfide alarms started, requiring Refinery

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

11                     THIRD AMENDED COMPLAINT

workers to exit the FCC unit.

41.     As residents and workers were finishing their morning commutes on February 18, 2015 a blast which hit the Torrance area with a shockwave comparable to an earthquake, originated from the refinery's 12-story electrostatic precipitators ("ESP"). As a result, the residents, commuting workers, and business owners of the Torrance area suffered significant economic harm.

42.     The explosion was not a freak accident nor a chance occurrence, and it released dangerous compounds into the atmosphere in and surrounding the City of Torrance. The explosion and resulting release were inevitable byproducts of DEFENDANTS' willful and conscious disregard of public safety. In the aftermath of the explosion, copious evidence of multiple health and safety violations at the Refinery all point to one conclusion: it was only a matter of time until the failures and poor decisions by DEFENDANTS' officers, directors, and managing agents allowed such an incident to occur.

43.     Following the explosion, California's Division of Occupational Safety and Health (Cal/OSHA) ordered Defendant EXXON to shut down the unit until it could demonstrate safe operation.

44.     PLAINTIFFS are informed and believe and thereon allege that since as early as 2007, DEFENDANTS were aware of safety concerns, including those of Cal/OSHA, regarding the ESP, but DEFENDANTS did not act to resolve those concerns.

45.     PLAINTIFFS are informed and believe and thereon allege that since as early as 2006, DEFENDANTS were aware of safety concerns, including those of Cal/OSHA, regarding FCC unit, but DEFENDANTS did not act to resolve those concerns.

46.     In addition to ignoring the dangers from lack of proper maintenance and safe operations, DEFENDANTS' officers, directors, and managing agents, used a specific process while operating the refinery that utilizes the highly toxic

substance known as modified hydrofluoric acid ("MHF").

47.    Hydrofluoric acid was previously banned in the 1990s by the Air Quality Management District ("AQMD") until challengers overturned the ban in court.

48.    Following the general ban on hydrofluoric acid, the Refinery began using a MHF substitute in its refining process.

49.    The Refinery's MHF storage tanks lie within the blast radius of the ESP that exploded on February 12, 2015. Due to the blast, thousands of pounds of equipment and large pieces of debris hit the scaffolding and general area that was surrounding a tank containing MHF. If the equipment had hit the tank it likely would have caused a catastrophic release of MHF into the surrounding area and neighborhoods.

50.    PLAINTIFFS are informed and believe and thereon allege that just within a short 3-mile radius distance of the Refinery there are over 330,000 residents, 71 schools, and 8 hospitals.

51.    Following the February 18, 2015 explosion, the Refinery underwent repairs, but did not change its use of MHF or location of the storage tanks.

52.    On or about May 10, 2016, approximately 15 months after the February 18, 2015 explosion, the refinery began a re-start process in order to once again begin operating. During the initial period of this restart process, until the ESP began operation, the refinery operated without pollution-control devices.

53.    PLAINTIFFS are informed and believe, and thereon allege, that during the time period that the Refinery began operations without pollution-control devices at least hundreds of pounds of excess particulate emissions were released.

54.    PLAINTIFFS are informed and believe, and thereon allege, that the restart of the Refinery was rushed so that it would be operating prior to Defendant EXXON's sale to TRC and its affiliate entities.

55.    On or about July 1, 2016 TRC and its owning entities completed the

purchase of the Refinery through a subsidiary company for a price of approximately $537.5 million, plus working capital.

56.     DEFENDANTS have and/or continue to operate the Refinery in a manner that creates a nuisance and additional pollutants, including multiple flaring events — the burning off of gas during certain scheduled maintenance events and unscheduled malfunctions — that have occurred multiple times since the restart of the refinery.

57.     Flaring events include, but are not limited to, a September 19, 2016 and an October 11, 2016 flaring event caused by power outages and a July 11, 2016 flaring event caused by a software malfunction. PLAINTIFFS are informed and believe, and thereon allege, that these flaring events are avoidable and cause an increase in the emission of pollutants near the Refinery.

58.     DEFENDANTS have and/or continue to operate the Refinery in a manner that creates ultrahazardous conditions, including continued volatile and potentially explosive processes near MHF storage tanks.

59.     Immediately following the February 18, 2015 explosion, ARNOLD GOLDSTEIN watched as ash fell from the sky like snow, covering the area around him and obscuring vision on the street. Since the time of his exposure to the fallout of the explosion, ARNOLD GOLDSTEIN has developed and suffers from a persistent cough and diagnosed asthma.

60.     Immediately following the February 18, 2015 explosion, GISELA JANETTE LA BELLA was jogging with her dog when the fallout and ash began to land around them both. Since the time of GISELA JANETTE LA BELLA's exposure to the fallout of the explosion she has suffered damage to her larynx, causing her great pain in her second job as a singer. Since the time of GISELA JANETTE LA BELLA's exposure to the fallout of the explosion her dog became seriously ill and required expensive veterinary intervention and treatment.

61.     Immediately following the February 18, 2015 explosion HANY

YOUSSEF watched while ash and other debris fell on his property from the explosion and resulting fire.

**B.**     **Groundwater Contamination**

62.     Defendant EXXON conducted tests in and around several homes on Del Amo Boulevard in Torrance, California following complaints of gasoline-like odors, concerns about air quality and the presence of methane gas. These tests revealed that contaminants from the Refinery had entered the groundwater and extended out in a "plume" into the neighboring community.

63.     The DEFENDANTS' soil and groundwater contamination remains today and these plumes of harmful contaminants, including Benzene and other volatile organic compounds, and petroleum products, have consistently volatized into gases and vapors ("soil gas") in the areas above these plumes. DEFENDANTS' own required investigations and reporting show the continued existence of this contamination, which may be far more extensive than self-reported. See Exhibits 1-3 (Groundwater Contamination Plume Maps), incorporated herein by reference.

64.     Exhibit 1 is a true and correct copy of a figure showing a recognized plume of FHP contamination on a contour map of the surrounding community which Defendant EXXON submitted to the California Regional Water Quality Control Board Los Angeles Region on April 21, 2015. Exhibit 2 is a true and correct copy of a figure showing a plume of Benzene contamination on a contour map of the surrounding community which Defendant EXXON attached to the same report.

65.     Exhibit 3 is a true and correct copy of a figure showing a recognized plume of Benzene contamination on a similar contour map of the surrounding community which Defendant EXXON submitted to the California Regional Water Quality Control Board Los Angeles Region on August 18, 2018.

66.     When HANY YOUSSEF purchased his former home on Del Amo

Boulevard with his wife, he was unaware of the Benzene and other industrial chemicals in the groundwater beneath his home. At no time have DEFENDANTS issued any notice to YOUSSEF or other residents and persons about the danger lurking below his home and the areas as reflected in EXXON's investigations and reports. By and through their wrongful acts, DEFENDANTS' have occupied and used the properties of PLAINTIFFS including YOUSSEF for the storage of materials including toxic substances, and DEFENDANTS' wrongful use of the properties including by trespass, entitles PLAINTIFFS to the greater of the reasonable rental value of the properties or the benefits obtained by the DEFENDANTS wrongfully occupying the properties by reason of the wrongful occupations.

## CAUSES OF ACTION ASSERTED BY NAVARRO ON BEHALF OF HIMSELF AND THE AIR CLASS

### FIRST CAUSE OF ACTION

**Private Nuisance - Continuing**

**(Against TORRANCE REFINING COMPANY, LLC)**

67.     PLAINTIFFS incorporate and re-allege, as though fully set forth above, each of the preceding paragraphs.

68.     Navarro owned, leased, occupied, and/or controlled property at or near the Refinery. Navarro has the inalienable right to own, enjoy, and use his property without interference by DEFENDANTS' conduct.

69.     Navarro continues to own, lease, occupy, and/or controlled property at or near the Refinery. Navarro has the inalienable right to own, enjoy, and use his properties without interference by DEFENDANTS' conduct.

70.     DEFENDANTS by reason of their failure to exercise care in their operation and maintenance of the refinery, created a condition that harmed and interfered with Navarro's free use and enjoyment of his land, as Navarro, along with numerous other neighbors, have suffered the loss of the use and enjoyment of

MATERN LAW GROUP, PC
1230 ROSECRANS AVENUE, STE 200
MANHATTAN

THIRD AMENDED COMPLAINT

their properties, in the form of a significant decrease in the value of the properties, and/or exposure to an array of toxic substances on the land.

71.     An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by DEFENDANTS.

72.     Navarro did not consent to the DEFENDANTS' conduct. To the extent Navarro gave any express or implied permission for the maintenance of an oil refinery near his property, such permission extended only to a properly maintained, up-to-date, and safe refinery, and DEFENDANTS exceeded the scope of any such consent by operating a poorly maintained, dangerous, aging, and ultimately faulty refinery near Navarro's property.

73.     The aforementioned conduct of DEFENDANTS constitutes a nuisance within the meaning of section 3479 of the Civil Code in that it is injurious Navarro and/or the unreasonably interferes with the conformable enjoyment of its property and/or unlawfully obstructs the free use, in the customary manner, of Navarro's property.

74.     The seriousness of the injuries to Navarro outweighs the social utility of DEFENDANTS' conduct, as DEFENDANTS could have taken steps to prevent the harm while still refining oil.

75.     As a direct and legal cause of the wrongful acts herein set forth, Navarro suffered damages as described above in the preceding paragraphs.

## SECOND CAUSE OF ACTON

### Private Nuisance - Permanent

### (Against TORRANCE REFINING COMPANY, LLC)

76.     Navarro incorporates and re-alleges, as though fully set forth above, each of the preceding paragraphs.

77.     Navarro owned, leased, occupied, and or controlled property near the Refinery.

78.     DEFENDANTS by reason of their failure to exercise care in their

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

17                              THIRD AMENDED COMPLAINT

operation and maintenance of the refinery, creates a condition that permanently harmed Navarro and interfered with Navarro's free use and enjoyment of his land, as Navarro, along with numerous other neighbors, have suffered the loss of the use and enjoyment of their properties, in the form of a significant decrease in the value of the property, and/or exposure to an array of toxic substances on the land.

79.   An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by DEFENDANTS.

80.   Navarro did not consent to the DEFENDANTS' conduct, which was a substantial factor in causing Navarro' harm.

81.   The seriousness of the harm to Navarro outweighs the public benefit of DEFENDANTS' conduct.

82.   As a direct and legal cause of the wrongful acts herein set forth, Navarro suffered damages as described above in the preceding paragraphs.

### THIRD CAUSE OF ACTION

### Public Nuisance - Continuing

### (Against TORRANCE REFINING COMPANY, LLC)

83.   Navarro incorporates and re-alleges, as though fully set forth above, each of the preceding paragraphs.

84.   DEFENDANTS by reason of their failure to exercise care in operation and maintenance of the Refinery, created a condition that harmed the public and interfered with the public's free use and enjoyment of public land, as Navarro, along with numerous residents and surrounding neighbors, have suffered the loss of the use and enjoyment of their properties, in the form of a significant decrease in the value of the property, and/or exposure to an array of toxic substances on the land.

85.   An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by DEFENDANTS.

86.   The conditions affected a substantial number of people at the same

time.

87.     The seriousness of the harm outweighs the social utility of DEFENDANTS' conduct.

88.     Navarro did not consent to DEFENDANTS' conduct.

89.     As direct and legal cause of the wrongful acts herein set forth, Navarro suffered damages as described above in the preceding paragraphs.

## FOURTH CAUSE OF ACTION

### Public Nuisance – Permanent

### (Against TORRANCE REFINING COMPANY, LLC)

90.     Navarro incorporates and re-alleges, as though fully set forth above, each of the preceding paragraphs.

91.     DEFENDANTS by reason of their failure to exercise care in operation and maintenance of the Refinery, created a condition that harmed the public and interfered with the public's free use and enjoyment of public land, as Navarro, along with numerous residents and surrounding neighbors, have suffered the loss of the use and enjoyment of their properties, in the form of a significant decrease in the value of the property, and/or exposure to an array of toxic substances on the land.

92.     An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by DEFENDANTS.

93.     The conditions affected a substantial number of people at the same time.

94.     The seriousness of the harm outweighs the social utility of DEFENDANTS' conduct.

95.     Navarro did not consent to DEFENDANTS' conduct.

96.     As direct and legal cause of the wrongful acts herein set forth, Navarro suffered damages as described above in the preceding paragraphs.

**CAUSES OF ACTION ASSERTED BY JOSE NAVARRO ON BEHALF OF HIMSELF AND THE GROUND CLASS**

**FIFTH CAUSE OF ACTION**

**Trespass**

**(Against all DEFENDANTS)**

97.   Navarro incorporates and re-alleges, as though fully set forth above, each of the preceding paragraphs.

98.   DEFENDANTS were engaged in an extrahazardous activity and/or intentionally, recklessly, and/or negligently caused an array of toxic substances to enter Navarro's property.

99.   Navarro did not give permission for this direct and/or indirect entry.

100.   Navarro, along with numerous residents and surrounding neighbors, have been harmed by DEFENDANTS' conduct, as Navarro has suffered the loss of the use and enjoyment of his property, in the form of significant decrease in the value of the property, and/or exposure to an array of toxic substances on the land.

101.   An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by DEFENDANTS.

102.   As direct and legal cause of the wrongful acts herein set forth, Navarro suffered damages as described above in the preceding paragraphs.

**CAUSES OF ACTION ASSERTED BY GOLDSTEIN, LA BELLA, AND YOUSSEF**

**SIXTH CAUSE OF ACTION**

**Negligence**

**(Against all DEFENDANTS)**

103.   PLAINTIFFS incorporate and re-allege, as though fully set forth above, each of the preceding paragraphs.

104.   PLAINTIFFS are informed and believe, and thereon allege, that at the time of the explosion, EXXON owned, operated, controlled, managed, and/or

maintained the Refinery, as described above.

105.   PLAINTIFFS are informed and believe, and thereon allege, that shortly following the restart of the Refinery, Defendant TRC owned, operated, controlled, managed, and/or maintained the Torrance Refinery, as described above.

106.   At all relevant times, DEFENDANTS were required to exercise the utmost care and diligence in the ownership, operation, management, supervision, inspection, maintenance, repair, and/or control of the Refinery, so as to not cause harm to public property, the environment, public resources, public health, and/or the comfortable use and enjoyment of life and liberty by the public.

107.   At all relevant times, DEFENDANTS failed to exercise care in its ownership, operation, management, supervision, inspection, maintenance, repair, and/or control of the Refinery, including, but not limited to, failing to properly inspect and replace equipment, continued use of dangerous MHF near volatile processing units, and failing to comply with applicable safety standards.

108.   As a further direct and legal result of the aforesaid premises, PLAINTIFFS have suffered damages, including but not limited to costs for emergency response, clean up of debris, medical bills, and loss of use and enjoyment of property in an amount, according to proof at trial, beyond the jurisdictional minimum of this Court.

109.   As a further direct and legal result of the aforesaid allegations, PLAINTIFFS' properties have suffered a loss of fair market property values as a result of the February 18, 2015 explosion and the continued release of toxins and noise into the atmosphere throughout the operation of the Refinery.

110.   As a further direct and legal result of the aforesaid allegations, PLAINTIFFS have suffered damage to environmental resources.

111.   As a further direct and legal result of the aforesaid allegations, PLAINTIFFS have suffered harm to the public health, obstruction of the free passage and use of property of public property, and/or the interference with the

comfortable enjoyment of life or property.

112.   PLAINTIFFS did not consent to DEFENDANTS' conduct, which required and continues to require the public to shelter-in-place for extended periods to avoid immediate harm and has created long-lasting, continuing, and/or permanent harm to public health, the environment, and property valuations.

113.   The wrongful acts of DEFENDANTS were done maliciously, oppressively, fraudulently, and in conscious disregard of the safety and health of the community.  PLAINTIFFS are entitled to punitive and exemplary damages in an amount to be ascertained according the proof, which is appropriate to punish or set an example of Defendant and deter such behavior.

114.   As a direct and legal cause of the wrongful acts herein set forth, PLAINTIFFS suffered damages as described above in the preceding paragraphs.

## SEVENTH CAUSE OF ACTION

### Strict Liability – Ultrahazardous Activity

### (Against all DEFENDANTS)

115.   PLAINTIFFS incorporate and re-allege, as though fully set forth above, each of the preceding paragraphs.

116.   At all times relevant herein, DEFENDANTS' activities in operating, controlling, managing, and/or maintaining the Refinery constitutes an ultrahazardous and abnormally dangerous activity, as maintenance of an outdated Refinery, particularly one using MHF, in a densely populated area poses serious risk of harm, regardless of the amount of care exercised.

117.   As alleged herein, PLAINTIFFS were seriously harmed which was a direct result of DEFENDANTS' ultrahazardous activities in operating and maintaining the Refinery.

118.   PLAINTIFFS' harm, as outlined herein, was the kind of harm that would be anticipated as a result of the risk created by DEFENDANTS' abnormally dangerous activities, i.e., maintenance of an oil refinery, especially an old,

dangerous, and poorly maintained refinery using MHF, in a densely populated area.

119.   DEFENDANTS' ultrahazardous activities resulted in an explosion that emitted debris, ash, toxins, smoke, and other dangerous chemicals into the air, and was therefore a substantial factor causing PLAINTIFFS' harm.

120.   As a direct and legal cause of the wrongful acts herein set forth, PLAINTIFFS suffered damages as described above in the preceding paragraphs.

## EIGHTH CAUSE OF ACTION

### Private Nuisance - Continuing

### (Against all DEFENDANTS)

121.   PLAINTIFFS incorporate and re-allege, as though fully set forth above, each of the preceding paragraphs.

122.   PLAINTIFFS owned, leased, occupied, and/or controlled property at or near the Refinery. PLAINTIFFS have the inalienable right to own, enjoy, and use its property without interference by DEFENDANTS' conduct.

123.   PLAINTIFFS continue to own, lease, occupy, and/or controlled property at or near the Refinery. PLAINTIFFS have the inalienable right to own, enjoy, and use their properties without interference by DEFENDANTS' conduct.

124.   DEFENDANTS by reason of their failure to exercise care in their operation and maintenance of the refinery, created a condition that harmed PLAINTIFFS and interfered with PLAINTIFFS' free use and enjoyment of their land, as PLAINTIFFS, along with numerous other neighbors, have suffered the loss of the use and enjoyment of their properties, in the form of damage to buildings and personal property and/or a significant decrease in the value of the properties, and/or exposure to an array of toxic substances on the land, and/or a lingering malicious odor, noise, soot, ash, and dust in the air.

125.   An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by DEFENDANTS.

126.   PLAINTIFFS did not consent to the DEFENDANTS' conduct. To the

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

23          THIRD AMENDED COMPLAINT

extent PLAINTIFFS gave any express or implied permission for the maintenance of an oil refinery near their properties, such permission extended only to a properly maintained, up-to-date, and safe refinery, and DEFENDANTS exceeded the scope of any such consent by operating a poorly maintained, dangerous, aging, and ultimately faulty refinery near the PLAINTIFFS.

127.   The aforementioned conduct of DEFENDANTS constitutes a nuisance within the meaning of section 3479 of the Civil Code in that it is injurious and/or offensive to the sense of the PLAINTIFFS and/or the unreasonably interferes with the conformable enjoyment of its property and/or unlawfully obstructs the free use, in the customary manner, of PLAINTIFFS' properties.

128.   The seriousness of the injuries to PLAINTIFFS outweighs the social utility of DEFENDANTS' conduct, as DEFENDANTS could have taken steps to prevent the harm while still refining oil.

129.   As a direct and legal cause of the wrongful acts herein set forth, PLAINTIFFS suffered damages as described above in the preceding paragraphs.

## NINTH CAUSE OF ACTION

### Private Nuisance Permanent

### (Against all DEFENDANTS)

130.   PLAINTIFFS incorporate and re-allege, as though fully set forth above, each of the preceding paragraphs.

131.   PLAINTIFFS owned, leased, occupied, and or controlled the properties.

132.   DEFENDANTS by reason of their failure to exercise care in its operation and maintenance of the refinery, creates a condition that permanently harmed PLAINTIFFS and interfered with PLAINTIFFS' free use and enjoyment of their land, as PLAINTIFFS, along with numerous other neighbors, have suffered the loss of the use and enjoyment of their properties, in the form of damage to buildings and personal property and/or a significant decrease in the value of the property,

and/or exposure to an array of toxic substances on the land, and/or a lingering malicious odor, noise, soot, ash, and dust in the air.

133.   An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by DEFENDANTS.

134.   PLAINTIFFS did not consent to the DEFENDANTS' conduct, which was a substantial factor in causing PLAINTIFFS' harm.

135.   The seriousness of the harm to PLAINTIFFS outweighs the public benefit of DEFENDANTS' conduct.

136.   As a direct and legal cause of the wrongful acts herein set forth, PLAINTIFFS suffered damages as described above in the preceding paragraphs.

## **TENTH CAUSE OF ACTION**

### **Public Nuisance - Continuing**

### **(Against all DEFENDANTS)**

137.   PLAINTIFFS incorporate and re-allege, as though fully set forth above, each of the preceding paragraphs.

138.   DEFENDANTS by reason of their failure to exercise care in operation and maintenance of the Refinery, created a condition that harmed the public and interfered with the public's free use and enjoyment of public land, as PLAINTIFFS, along with numerous residents and surrounding neighbors, have suffered the loss of the use and enjoyment of their properties, in the form of damage to buildings and personal property and/or a significant decrease in the value of the property, and/or exposure to an array of toxic substances on the land, and/or a lingering malicious odor, noise, soot, ash, and dust in the air.

139.   An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by DEFENDANTS.

140.   The conditions affected a substantial number of people at the same time.

141.   The seriousness of the harm outweighs the social utility of

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

25                    THIRD AMENDED COMPLAINT

DEFENDANTS' conduct.

142.   PLAINTIFFS did not consent to DEFENDANTS' conduct.

143.   As direct and legal cause of the wrongful acts herein set forth, PLAINTIFF suffered damages as described above in the preceding paragraphs.

## ELEVENTH CAUSE OF ACTION

### Public Nuisance – Permanent

### (Against all DEFENDANTS)

144.   PLAINTIFFS incorporate and re-allege, as though fully set forth above, each of the preceding paragraphs.

145.   DEFENDANTS by reason of their failure to exercise care in operation and maintenance of the Refinery, created a condition that harmed the public and interfered with the public's free use and enjoyment of public land, as PLAINTIFFS, along with numerous residents and surrounding neighbors, have suffered the loss of the use and enjoyment of their properties, in the form of damage to buildings and personal property and/or a significant decrease in the value of the property, and/or exposure to an array of toxic substances on the land, and/or a lingering malicious odor, noise, soot, ash, and dust in the air.

146.   An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by DEFENDANTS.

147.   The conditions affected a substantial number of people at the same time.

148.   The seriousness of the harm outweighs the social utility of DEFENDANTS' conduct.

149.   PLAINTIFFS did not consent to DEFENDANTS' conduct.

150.   As direct and legal cause of the wrongful acts herein set forth, PLAINTIFF suffered damages as described above in the preceding paragraphs.

*///*

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

26

THIRD AMENDED COMPLAINT

# TWELFTH CAUSE OF ACTION

## Trespass

## (Against all DEFENDANTS)

151.   PLAINTIFFS incorporate and re-allege, as though fully set forth above, each of the preceding paragraphs.

152.   DEFENDANTS were engaged in an extrahazardous activity and/or intentionally, recklessly, and/or negligently caused an array of toxic substances, a lingering malicious odor, noise, soot, ash, and/or dust to enter PLAINTIFFS' properties.

153.   PLAINTIFFS did not give permission for this direct and/or indirect entry.

154.   PLAINTIFFS, along with numerous residents and surrounding neighbors, have been harmed by DEFENDANTS' conduct, as PLAINTIFFS' have suffered the loss of the use and enjoyment of their properties, in the form of damage to buildings and personal property and/or a significant decrease in the value of the property, and/or exposure to an array of toxic substances on the land, and/or a lingering malicious odor, noise, soot, ash, and dust in the air.

155.   An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by DEFENDANTS.

156.   As direct and legal cause of the wrongful acts herein set forth, PLAINTIFF suffered damages as described above in the preceding paragraphs.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jose Navarro, individually and on behalf of all other persons similarly situated, and Plaintiffs Arnold Goldstein, Janette Gisela La Bella, and Hany Youssef respectfully pray for relief against DEFENDANTS, and each of them, as follows:

1.   For compensatory damages;

2.   For   equitable   relief   including   injunctive   relief   which   includes

abatement of DEFENDANTS' conduct giving rise to the claims alleged herein;

3.     For past and future damages related to environmental remediation and incidental costs according to proof;

4.     For diminution in property value according to proof;

5.     For pre- and post-judgment interest on all damages as allowed by the law;

6.     For attorneys' and expert/consultant fees under existing law;

7.     For punitive damages in an amount according to proof or taking some measure to ensure that an example is made of DEFENDANTS to deter similar future conduct;

8.     For injunctive relief;

9.     For costs of suit incurred herein; and

10.    For such other and future relief as the Court may deem just and proper.


DATED: May 12, 2021              Respectfully submitted,
                                 **MATERN LAW GROUP, PC**


                          By:   */s/ Matthew J. Matern*
                                Matthew J. Matern
                                Joshua D. Boxer
                                Tagore Subramaniam

                                Attorneys for Plaintiff JOSE
                                NAVARRO and the certified classes and
                                for ARNOLD GOLDSTEIN, GISELA
                                JANETTE LA BELLA, and HANY
                                YOUSSEF

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

28                    THIRD AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SHER EDLING LLP**


By: */s/ Adam M. Shapiro*
      Matthew K. Edling
      Adam M. Shapiro
      Stephanie D. Biehl

      Attorneys for Plaintiff JOSE
      NAVARRO and the certified classes

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

29

THIRD AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

PLAINTIFFS hereby demand a jury trial with respect to all issues triable of right by jury.

DATED: May 12, 2021          Respectfully submitted,
                             **MATERN LAW GROUP, PC**

By:   */s/ Matthew J. Matern*
      Matthew J. Matern
      Joshua D. Boxer
      Tagore Subramaniam

      Attorneys for Plaintiff JOSE
      NAVARRO and the certified classes and
      for ARNOLD GOLDSTEIN, GISELA
      JANETTE LA BELLA, and HANY
      YOUSSEF


      **SHER EDLING LLP**

By:   */s/ Adam M. Shapiro*
      Matthew K. Edling
      Adam M. Shapiro
      Stephanie D. Biehl

      Attorneys for Plaintiff JOSE
      NAVARRO and the certified classes

MATERN LAW
GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN

THIRD AMENDED COMPLAINT