**MATERN LAW GROUP, PC**
Matthew J. MATERN (SBN 159798)
mmatern@maternlawgroup.com
JOSHUA D. BOXER (SBN 226712)
jboxer@maternlawgroup.com
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
Telephone: (310) 531-1900
Facsimile: (310) 531-1901

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE NAVARRO, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>Defendants TORRANCE REFINING COMPANY, LLC, a Delaware Limited Liability Company, and DOES 1 through 100, inclusive,<br><br>Defendants | CASE NO.: 2:17-cv-02477-DSF (SKx)<br><br>**FOURTH AMENDED COMPLAINT**<br><br>**CLASS ACTION:**<br><br>1. Private Nuisance (Continuing)<br>2. Public Nuisance (Continuing)<br><br>**DEMAND FOR JURY TRIAL** |

PLAINTIFF JOSE NAVARRO ("PLAINTIFF") brings this action ("Complaint") against Defendants TORRANCE REFINING COMPANY, LLC ("TORC"); and DOES 1-100 (collectively "DEFENDANTS"). PLAINTIFF avers the following upon personal knowledge, and information and belief based upon the investigation of counsel as to all other facts alleged in the Complaint:

1. This case represents an example of a corporate choice to place profits over public safety. It arises from operations at the Torrance Refinery located at 3700 W 190th Street, Torrance, California ("Refinery") and the years of neglect, lax oversight, and corporate indifference to necessary safety, operating standards, and the failure to exercise necessary diligence, that caused numerous fires, leaks, explosions, and other releases of dangerous pollutants into the adjacent community.

2. PLAINTIFF is informed and believes and thereon alleges that just within a short 3-mile radius distance of the Refinery there are over 330,000 residents, 71 schools, and 8 hospitals.

**Groundwater Contamination**

3. Defendant TORC and/or the predecessor owner and operator of the Refinery, Exxon Mobile Corporation ("EXXON") conducted tests in and around several homes on Del Amo Boulevard in Torrance, California following complaints of gasoline-like odors, concerns about air quality and the presence of methane gas. These tests revealed that contaminants from the Refinery had entered the groundwater and extended out in a "plume" into the neighboring community.

4. The DEFENDANTS' soil and groundwater contamination remains today and these plumes of harmful contaminants, including benzene, toluene, xylenes, and other volatile organic compounds and petroleum products, have consistently volatized into gases and vapors that migrate into the soil above the groundwater ("soil gas" or "soil vapor") in the areas above these plumes, including the property where PLAINTIFF'S home is located and the community surrounding the Refinery. DEFENDANTS' own required investigations and reporting show the

continued existence of this contamination, which may be far more extensive than self-reported. See Exhibits 1-3 (Groundwater Contamination Plume Maps), incorporated herein by reference.

5. PLAINTIFF is informed and believes and thereon alleges that the health risks posed by emissions from the refinery, including plumes of groundwater contamination and soil gas comprised of benzene, toluene, and xylenes, among other toxic chemicals, pose substantial and unreasonable risk of harm to PLAINTIFF'S health and the health of a considerable number of individuals in the community.

6. Benzene has been demonstrated to affect the human immunological, cardiovascular, neurological, and excretory systems, causing or increasing the chances of developing diseases, including but not limited to leukemia, anemia, lymphoma, multiple myeloma, arrhythmias, menstrual disorders, pre-term delivery, kidney cancer, asthma, bone cancer, brain cancer, breast cancer, gallbladder cancer, liver cancer, lung cancer, and peripheral neuropathy.

7. Exposure to toluene by inhalation or dermal adsorption mainly affects the neurological, cardiovascular, digestive, immunological, integument, reproductive/developmental, and respiratory body systems and there is evidence that toluene exposure may cause or increase the risk of developing arrhythmias, cognitive impairment, mental retardation, developmental delay, delayed growth, fetotoxicity, low birth weight, menstrual disorders, scleroderma, asthma, brain cancer, colorectal cancer, immune suppression, peripheral neuropathy, and stomach cancer.

8. Xylenes affect mainly the cardiovascular, neurological, reproductive/developmental, integument, and digestive body systems and there is evidence that xylenes may cause or increase the risk of developing cognitive impairment, mental retardation, developmental delay, fetotoxicity, hearing loss, hormonal changes, menstrual disorders, scleroderma, hepatitis, colorectal cancer,

peripheral neuropathy, and stomach cancer.

9. Exhibit 1 is a true and correct copy of a figure showing a recognized plume of Free-phase Hydrocarbon Product ("FHP") contamination on a contour map of the surrounding community which EXXON submitted to the California Regional Water Quality Control Board Los Angeles Region on April 21, 2015. Exhibit 2 is a true and correct copy of a figure showing a plume of benzene contamination on a contour map of the surrounding community which Defendant EXXON attached to the same report.

10. Exhibit 3 is a true and correct copy of a figure showing a recognized plume of benzene contamination on a similar contour map of the surrounding community which Defendant EXXON submitted to the California Regional Water Quality Control Board Los Angeles Region on August 18, 2018.

11. PLAINTIFF'S property and the properties of a substantial community of persons are located within the plumes of contamination delineated by the EXXON reports. PLAINTIFF is informed and believes and thereon alleges that PLAINTIFF and members of the community are substantially and unreasonably affected by the increased risk of cancer and other substantial harm posed by the soil gas vapors that intrude onto their properties from the plumes of groundwater contaminants.

12. At no time have DEFENDANTS issued any notice to PLAINTIFF or other community residents and persons about the danger lurking below their homes and the surrounding areas as reflected in EXXON's investigations and reports.

**Airborne Contamination**

13. PLAINTIFF is informed and believes and thereon alleges that Defendant TORC's operations at the Refinery, including but not limited to the refining of crude oil into hydrocarbons and the transmission and storage of the refined and crude products, resulted in fugitive emissions of toxic air contaminants over and onto PLAINTIFF'S property and the community surrounding the

Refinery.

14. PLAINTIFF is informed and believes and thereon alleges that TORC maintains a fenceline monitoring program at the Refinery, data from which demonstrates the continued release of pollutants from the Refinery and indicates the migration of air pollution from the Refinery into the surrounding community via prevailing wind patterns.

15. PLAINTIFF is informed and believes and thereon alleges that the airborne plumes of toxic contaminants emanating from the Refinery and travelling into the community include emissions of diesel particulate matter ("DPM"), volatile organic compounds ("VOCs") such as benzene, and toxic metals such as hexavalent chromium.

16. DPM is listed as a carcinogen under California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Prop 65") and has been identified as a toxic air contaminant by the California Air Resources Board ("CARB"). In a 1998 assessment, CARB found that over 30 human epidemiological studies have investigated the potential carcinogenicity of diesel exhaust. These studies, on average, found that long-term occupational exposures to diesel exhaust were associated with a 40 percent increase in the relative risk of lung cancer.

17. Benzene is listed as a carcinogen under Prop 65 and has been identified as a toxic air contaminant by CARB. Numerous agencies, including the United States Environmental Protection Agency ("U.S. EPA"), have identified benzene as a human carcinogen. Benzene has been demonstrated to affect the human immunological, cardiovascular, neurological, and excretory systems, causing or increasing the chances of developing diseases, including but not limited to leukemia, anemia, lymphoma, multiple myeloma, arrhythmias, menstrual disorders, pre-term delivery, kidney cancer, asthma, bone cancer, brain cancer, breast cancer, gallbladder cancer, liver cancer, lung cancer, and peripheral neuropathy.

18. Hexavalent chromium is listed as a carcinogen and reproductive toxin under Prop 65 and has been identified as a toxic air contaminant by CARB. It has also been identified as a human carcinogen by the U.S. EPA, and studies have consistently shown increased lung cancer rates in workers who were exposed to high levels of hexavalent chromium in workroom air.

19. PLAINTIFF is informed and believes and thereon alleges that the cocktail of toxic air contaminants emanating from the Refinery that includes DPM, benzene, and hexavalent chromium is above thresholds for acceptable exposure and poses an unacceptable health risk to those living within striking distance of the airborne plumes of toxic contamination.

20. PLAINTIFF is informed and believes and thereon alleges that in 2017, TORC submitted a Voluntary Risk Reduction Plan ("VRRP") to the South Coast Air Quality Management District ("SCAQMD"), which identified known sources of emissions for toxic air contaminants at the Refinery and demonstrated an elevated cancer risk for those living in the adjacent community. A 1 in 1 million cancer risk is the generally accepted de minimis level for cancer risk. However, the VRRP shows PLAINTIFF'S property clearly within the boundary line of a 10 in 1 million contour map of elevated cancer due to of emissions from the Refinery. Some areas in the community are within a 25 in 1 million or 50 in 1 million contour map of elevated cancer risk due to emissions from the Refinery. TORC submitted revisions of the VRRP to the SCAQMD in 2019 and 2020, both of which acknowledge continued toxic airborne emissions but fail to establish that the Refinery has effected any reduction of those emissions into the surrounding community.

21. PLAINTIFF is informed and believes and thereon alleges that TORC maintains a fenceline monitoring program that has documented the continued release of DPM and benzene into the adjoining community at concentrations above reporting limits. PLAINTIFF is informed and believes and thereon alleges that the

fenceline monitoring program does not monitor for hexavalent chromium. However, PLAINTIFF is informed and believes and thereon alleges that Refinery emissions of hexavalent chromium increased four-fold from 2016 to 2019.

22. PLAINTIFF is informed and believes and thereon alleges that PLAINTIFF'S property and the properties of a substantial community of persons are located in a geographic zone where concentrations of airborne benzene, diesel exhaust particulates, and hexavalent chromium from Refinery operations exceed California or Federal guidelines for human exposure due to elevated cancer risk.

**Significant Health Risks of Separate and Combined Exposures**

23. PLAINTIFF is informed and believes and thereon alleges that groundwater and/or airborne releases of VOCs from the Refinery into the surrounding community comprise unacceptable and harmful levels of benzene, xylenes, methyl-t-butyl ether ("MTBE"), and toluene.

24. Sustained exposures to VOCs at the levels measured for benzene at PLAINTIFF'S property and in the surrounding community will present significant health risks to PLAINTIFF and community members.

25. The State of California and U.S. EPA have documented that exposure to VOCs from indoor air pollution will result in long and short term adverse health effects. To that end, U.S. EPA and DTSC have created a series of regional screening levels ("RSLs") to help identify threshold values where continued exposure to chemicals such as benzene will produce adverse health effects. The U.S. EPA and DTSC have set RSLs for carcinogens such as benzene at a de minimus level of one in one million.

26. Exposure to chemicals above their respective RSLs, especially chronic exposures that occur in living spaces, is likely to lead to substantial and unreasonable adverse health outcomes.

27. Repeated exposure to indoor VOCs may result in a wide range of systemic effects such as asthma and other chronic respiratory illnesses, reproductive

effects, and cancer. In particular, exposure to benzene mainly affects the immunological, cardiovascular, neurological, and excretory systems, causing and/or increasing the risk of developing the following diseases: leukemia, anemia, immune suppression, lymphoma, multiple myeloma, arrhythmias, menstrual disorders, pre-term delivery, kidney cancer, asthma, bone cancer, brain cancer, breast, cancer, gallbladder cancer, liver cancer, and peripheral neuropathy.

28. As detailed above, PLAINTIFF is informed and believes and thereon alleges that airborne emissions from the Refinery are exposing PLAINTIFF and members of the community to levels of diesel particulate matter and hexavalent chromium that pose a substantial and unreasonable risk of harm to human health.

29. PLAINTIFF is informed and believes and thereon alleges that the risk of harm to human health posed by emissions from the Refinery of VOCs, diesel particulate matter, and hexavalent chromium are additive. That is, the individual toxic effects of each contaminant add together to produce a biological effect that is the sum of the effects of the individual contaminants. PLAINTIFF is informed and believes and thereon alleges that the sum of the cancer risks for the Refinery's emissions of hexavalent chromium, diesel particulate matter, and benzene are in excess of 10 in 1,000,000 in the community. This is far above and ten times the de minimis risk of 1 in 1,000,000. PLAINTIFF is informed and believes and thereon alleges that 10 in 1,000,000 cancer risk is a conservative estimate insofar as exposure to toluene, xylenes, and other toxic chemicals from Refinery operations compound the additive effect of cancer risk from airborne and soil gas contaminants.

**JURISDICTION AND VENUE**

30. The District Court of the Central District of California has jurisdiction in this matter because PLAINTIFF is a resident of the State of California, and Defendant TORC is qualified to do business in California and regularly conducts business in California. DEFENDANTS removed this matter from the Superior Court

of the State of California under the Class Action Fairness Act and Plaintiff did not seek remand. No federal question is at issue because the claims are based solely on California law.

31. Venue is proper in this judicial district and the County of Los Angeles, California because PLAINTIFF, and other persons similarly situated, reside in the County of Los Angeles, DEFENDANTS maintain offices and facilities and transact business in the County of Los Angeles, and because DEFENDANTS' illegal and wrongful actions which are the subject of this action occurred to PLAINTIFF, and other persons similarly situated, in the County of Los Angeles.

## PLAINTIFF

32. Plaintiff JOSE NAVARRO owns the property located at 2205 Del Amo Boulevard, Torrance, California where he resides. Mr. Navarro's property has been impacted by hazardous air emissions and subsurface contamination emanating from the Refinery. Contamination from the Refinery has substantially and unreasonably interfered with Mr. Navarro's use and enjoyment of his property.

## DEFENDANT

33. PLAINTIFF is informed and believes, and thereon alleges, that defendant TORC is, and at all times relevant hereto was, a Delaware Limited Liability Company organized and existing under the laws of the State of Delaware. PLAINTIFF is further informed and believes, and thereon alleges, that defendant TORC is authorized to conduct business in the State of California, and does conduct business in the State of California. Specifically, defendant TORC maintains offices and facilities and conducts business in, and engages in illegal practices in the County of Los Angeles, State of California.

34. The true names and capacities of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFF at this time, and PLAINTIFF therefore sues such DOE Defendants under fictitious names. PLAINTIFF is informed and believes, and thereon alleges, that each Defendant designated as a DOE is in some

manner highly responsible for the occurrences alleged herein, and that PLAINTIFF and CLASS MEMBERS' injuries and damages, as alleged herein, were proximately caused by the conduct of such DOE Defendants. PLAINTIFF will seek leave of the court to amend this Complaint to allege their true names and capacities of such DOE Defendants when ascertained.

35. PLAINTIFF is informed and believes, and thereon alleges, each of the DEFENDANTS were the agent, servant, employee, partner, aider and abettor, co-conspirator, joint venturer, predecessor and/or successor in interest of each of the remaining DEFENDANTS named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy, alter ego, joint venture, predecessor and/or successor relationship. Each of the DEFENDANTS has rendered substantial assistance and encouragement to the other DEFENDANTS, knowing that their conduct was wrongful and/or unlawful, and each of the DEFENDANTS has ratified and approved of the acts of each of the remaining DEFENDANTS.

36. PLAINTIFF is informed and believes, and thereon alleges, that each of the DEFENDANTS is responsible for contamination to the air, soil, and groundwater for the area surrounding the refinery, including PLAINTIFF'S and community members' properties.

37. PLAINTIFF is informed and believes, and thereon alleges, that DEFENDANTS negligently repaired, operated and/or maintained the Refinery, which resulted in the release of harmful pollutants, noxious odors, and/or excessive noise invading PLAINTIFF'S property and land in the surrounding community, causing diminished use and enjoyment of the properties, pollution of the land and air in and around the properties, and/or caused adverse health effect.

38. PLAINTIFF is informed and believes, and thereon alleges, that the contamination of the soil and groundwater caused by the DEFENDANTS includes volatile chemicals which migrate and intrude into the surrounding properties below

the surface level of those properties and which volatize into soil gas that harmfully intrudes into those same properties both above and below ground.

39. PLAINTIFF is informed and believes, and thereon alleges, that these soil gas contaminants further intrude into the residences and businesses of the surrounding community exposing PLAINTIFF and community members to harmful toxic substances on the land, and/or a lingering malicious odor, toxic pollutants and noxious odors in the air invading PLAINTIFF'S and community members' land, causing diminished use and enjoyment of their properties, pollution of the soil and air in and around PLAINTIFF'S and community member properties, and/or resulting in adverse health effects or increased risk of adverse health effects.

40. PLAINTIFF is informed and believes, and thereon alleges, that these soil gas contaminants include benzene, a particularly harmful substance and known carcinogen.

41. PLAINTIFF is informed and believes, and thereon alleges, that DEFENDANTS have known of the soil and groundwater contamination caused by DEFENDANTS' operation of the Refinery and any attempts by DEFENDANTS to remediate the contamination has failed to noticeably reduce the soil gas contaminants that intrude into the surrounding properties, including but not limited to benzene, which is listed on California's Safe Drinking Water and Toxic Enforcement Act of 1986's list of chemicals known to the state to cause Cancer, Developmental Toxicity and Male Reproductive Toxicity.

42. PLAINTIFF is informed and believes, and thereon alleges, that the airborne plumes of toxic contamination caused by DEFENDANTS' operations at the Refinery that intrude onto PLAINTIFF'S property and into the adjacent community include unacceptable levels of benzene, diesel particulate matter, and hexavalent chromium that intrude into the air and rest upon properties surrounding the Refinery.

43. PLAINTIFF is informed and believes, and thereon alleges, that

DEFENDANTS have known of the airborne plumes of toxic contamination caused by DEFENDANTS' operation of the Refinery and any attempts by DEFENDANTS to remediate the contamination caused by these plumes has failed to reduce the unacceptable levels of benzene, diesel particulate matter, and hexavalent chromium that intrude into the surrounding properties, all of which are listed on California's Safe Drinking Water and Toxic Enforcement Act of 1986's list of Chemicals Known to The State to Cause Cancer or Reproductive Toxicity, January 27, 2023.

44. PLAINTIFF is informed and believes, and thereon alleges, that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, all DEFENDANTS, each acting as agents and/or employees, and/or under the direction and control of, each of the other DEFENDANTS, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control.

## FIRST CAUSE OF ACTION
### Private Nuisance - Continuing

45. PLAINTIFF incorporates and re-alleges, as though fully set forth above, each of the preceding paragraphs.

46. PLAINTIFF owned, leased, occupied, and/or controlled property at or near the Refinery. PLAINTIFF has the inalienable right to own, enjoy, and use its property without interference by DEFENDANTS' conduct.

47. PLAINTIFF continues to own, lease, occupy, and/or control property at or near the Refinery. PLAINTIFF has the inalienable right to own, enjoy, and use his property without interference by DEFENDANTS' conduct.

48. DEFENDANTS by reason of their failure to exercise care in their operation and maintenance of the Refinery, created a condition that is harmful to PLAINTIFF'S health and interfered with PLAINTIFF'S free use and comfortable enjoyment of his land. The release of toxic contaminants from the Refinery, including known carcinogens in quantities well above de minimis levels, into or

upon the groundwater, soil, air, and surface of PLAINTIFF'S property, substantially and unreasonably increased the risk of significant harm to PLAINTIFF by increasing PLAINTIFF'S risk of developing cancer or suffering other harms of importance caused by exposure to excess levels of benzene, diesel particulate matter, and hexavalent chromium, among other toxins.

49. PLAINTIFF has suffered an increased risk of developing cancer or other harm of importance due to actual exposure to the emissions of toxic contaminants from the Refinery. Moreover, PLAINTIFF has suffered the loss of the use and enjoyment of his property in the form of damage to or contamination of buildings and personal property and/or a significant decrease in the value of the property, and/or exposure to an array of toxic substances on the land, in the air, and/or on the property.

50. An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by DEFENDANTS.

51. PLAINTIFF did not consent to the DEFENDANTS' conduct. To the extent PLAINTIFF gave any express or implied permission for the maintenance of an oil refinery near his property, such permission extended only to a properly maintained, up-to-date, and safe refinery, and DEFENDANTS exceeded the scope of any such consent by operating a poorly maintained, dangerous, aging, and ultimately faulty refinery near PLAINTIFF.

52. The aforementioned conduct of DEFENDANTS constitutes a nuisance within the meaning of section 3479 of the Civil Code in that it is injurious and/or offensive to the senses of the PLAINTIFF and/or unreasonably interferes with the comfortable enjoyment of his property and/or unlawfully obstructs the free use, in the customary manner, of PLAINTIFF'S property.

53. The gravity of the harm to PLAINTIFF is manifestly unreasonable because the seriousness of the injuries to PLAINTIFF far outweigh the social utility of DEFENDANTS' conduct, as DEFENDANTS could have taken steps to prevent

the harm while still refining oil.

54. As a direct and legal cause of the wrongful acts herein set forth, PLAINTIFF suffered damages as described above in the preceding paragraphs.

## SECOND CAUSE OF ACTION

### Public Nuisance - Continuing

55. PLAINTIFF incorporates and re-alleges, as though fully set forth above, each of the preceding paragraphs.

56. DEFENDANTS, by reason of their failure to exercise care in operation and maintenance of the Refinery, created a condition that is harmful to the public's health and interfered with the public's free use and enjoyment of public and private land that is located within the plumes of toxic contamination emanating from the Refinery. The release of toxic contaminants from the Refinery, including known carcinogens in quantities well above de minimis levels, into or upon the groundwater, soil, air, and surface of property in the community neighboring the Refinery, substantially and unreasonably increased the risk of significant harm to a considerable number of persons in the community by increasing the risk of developing cancer or suffering other harms of importance caused by exposure to excess levels of benzene, diesel particulate matter, and hexavalent chromium, among other toxins.

57. A significant number of persons in the community have suffered an increased risk of developing cancer or other harm of importance due to actual exposure to the emissions of toxic contaminants from the Refinery. Moreover, community members have suffered the loss of the use and enjoyment of private and public properties within the plumes of contamination, in the form of damage to or contamination of buildings and personal property and/or a significant decrease in the value of the property, and/or exposure to an array of toxic substances on the land, in the air, and/or on properties.

58. An ordinary person of reasonable sensibilities would reasonably be

annoyed and/or disturbed by the conditions created by DEFENDANTS.

59. The aforementioned conduct of DEFENDANTS constitutes a nuisance within the meaning of section 3480 of the Civil Code in that it affected a considerable number of persons in the community at the same time. PLAINTIFF is informed and believes, and thereon alleges, that approximately 5,500 residences and 105 business within the community surrounding the Refinery are located within plumes of contamination emanating from the Refinery that contain levels diesel particulate matter and hexavalent chromium at levels at least five times the de minimis level, and a substantial number of residences and businesses are exposed to benzene and other chemicals through airborne plumes and soil gas intrusion emanating from the Refinery.

60. The gravity of the harm to the public is manifestly unreasonable because the seriousness of the injuries to public far outweighs the social utility of DEFENDANTS' conduct, as DEFENDANTS could have taken steps to prevent the harm while still refining oil.

61. PLAINTIFF did not consent to DEFENDANTS' conduct.

62. As direct and legal cause of the wrongful acts herein set forth, PLAINTIFF suffered damages as described above in the preceding paragraphs.

## DAMAGES AND OTHER RELIEF

63. In addition to the relief requested herein and in the Prayer for Relief below, PLAINTIFF alleges that as a direct and proximate result of the unlawful actions of DEFENDANTS, PLAINTIFF has suffered, and continues to suffer, from injuries to himself and/or to personal property in amounts as yet unascertained, but subject to proof at trial, and within the jurisdiction of this Court.

64. PLAINTIFF seeks injunctive relief and equitable relief regarding DEFENDANTS' past and ongoing unlawful conduct as more particularly alleged herein which includes the activities and/or inaction which give rise to the causes of cation for private nuisance and public nuisance. The injunctive and equitable relief

includes abatement of DEFENDANTS' unlawful activities and such actions and inactions which give rise to the claims alleged herein and the risk posed to the PLAINTIFF, as well as the public.

65. PLAINTIFF also seeks injunctive or other equitable relief to include abatement and/or monitoring necessary and appropriate as a result of DEFENDANTS' actions and inactions as more particularly alleged herein. PLAINTIFF is informed and believes and based thereon alleges that the monitoring of the site should include sampling because in order to further delineate and confirm the uncontested offsite migration of contaminants of concern ("COCs") emanating from the Refinery property, shallow groundwaters, soil gas and indoor air need to be sampled and monitored. This would involve multiple monitoring well (groundwater and soil gas) installations and a comprehensive indoor air sampling program, and also to continue the sampling of shallow groundwater and soil gas in the area. All sampling would need to be executed in a step-out fashion away from the Refinery property towards and into the residential neighborhoods. This sampling should be continuous based upon the risk that the Refinery as operated and DEFENDANTS' actions and inactions, pose to nearby residential neighborhoods both in the short-term and long-term. PLAINTIFF is informed and believes and based thereon alleges that the most recent depiction of the extents of the benzene and MTBE groundwater plume as defined by the AMEC (2018) at the southeastern corner of the Refinery property as delineated by the Refinery and its consultants. PLAINTIFF is informed and believes and based thereon alleges that the Refinery and its consultants are presently monitoring groundwater at only a few locations within the Gage Aquifer. PLAINTIFF is informed and believes and based thereon allege that a review of the most current monitoring report (AMEC, 2018) indicates a lack of shallow soil gas and indoor air monitoring, which are needed to evaluate any offsite migration of COCs within the Del Amo Residential Area. PLAINTIFF is informed and believes and based thereon alleges that the benzene

plume in the Gage Aquifer taken from the most current monitoring report (AMEC, 2018), shows the extent of the benzene plume into the Del Amo Residential Area has been delineated by the Refinery and its consultants in a manner that minimizes the extent of the COCs' migration into the residential area. PLAINTIFF is informed and believes and based thereon alleges the report shows that the interpolation of the isocontours in the vicinity of IV-02R and IV-01R has been conservatively drawn to minimize extents of the benzene plume. For example, benzene in well IV-02R has been detected at 2,300 ug/L and 690 ug/L at well IV-01R, respectively. South of these wells, 2 other wells indicate non-detect measurements for benzene, well V-07R which is about 1,000 feet and IV-02R, which is locate further south about 1,500 feet away.

66. PLAINTIFF is informed and believes and based thereon alleges that the COC plume boundary in the southwest is poorly defined, that there is a lack of monitoring points beyond the property boundary in this area and that it is highly likely that the COC plume extends offsite in the groundwater, soil gas and possibly indoor air, which given this area is a residential neighborhood, requires that groundwater, soil gas and indoor air sampling and monitoring should be conducted over time.

67. As a direct and proximate result of the unlawful actions of DEFENDANTS, and specifically due to PLAINTIFF and the public's significant and extensive exposure to one or more toxic substances, it is reasonably certain that PLAINTIFF and members of the public suffer a significantly increased risk of contracting a serious injury or latent disease relative to their risk had PLAINTIFF and the public not been exposed to these toxic substances. The diseases that may result from the exposure, such as cancer, are serious.

## **PRAYER FOR RELIEF**

**WHEREFORE**, PLAINTIFF, individually and on behalf of all other persons similarly situated, respectfully prays for relief against DEFENDANTS and DOES 1

MATERN LAW GROUP, PC
1230 ROSECRANS AVENUE, STE 200
MANHATTAN

17    FOURTH AMENDED COMPLAINT

through 100, inclusive, and each of them, as follows:

    1.    For compensatory damages, including but not limited to damages, costs;

    2.    For equitable relief including injunctive relief which includes abatement of DEFENDANTS' conduct giving rise to the claims alleged herein, including sampling and monitoring of shallow groundwaters, soil gas and indoor air;

    3.    For past and future damages related to environmental remediation and incidental costs according to proof;

    4.    For pre- and post-judgment interest on all damages as allowed by the law;

    5.    For attorneys' and expert/consultant fees under existing law;

    6.    For punitive damages in an amount according to proof or taking some measure to ensure that an example is made of DEFENDANTS to deter similar future conduct;

    7.    For injunctive relief;

    8.    For costs of suit incurred herein; and

    9.    For such other and future relief as the Court may deem just and proper.

DATED: March 24, 2023

Respectfully submitted,
**MATERN LAW GROUP, PC**

By: /s/ Matthew J. Matern
Matthew J. Matern
Joshua D. Boxer

Attorneys for Plaintiff Jose Navarro, individually, and on behalf of others similarly situated

**DEMAND FOR JURY TRIAL**

PLAINTIFF hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: March 24, 2023

Respectfully submitted,

**MATERN LAW GROUP, PC**

By: /s/ Matthew J. Matern
Matthew J. Matern
Joshua D. Boxer
Tagore Subramaniam

**SHER EDLING LLP**

Matthew K. Edling
Adam M. Shapiro
Margaret V. Tides

Attorneys for Plaintiff Navarro individually, and on behalf of others similarly situated