# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE NAVARRO,<br>          Plaintiff,<br><br>                    v.<br><br>EXXONMOBIL CORPORATION,<br>et al.,<br>          Defendants. | CV 17-2477 DSF (SKx)<br><br>Order GRANTING Motion for<br>Summary Judgment (Dkt. 326) |

## I. Introduction

Defendant Torrance Refining Company, LLC (TORC) moves for summary judgment as to Plaintiff Jose Navarro's claims for nuisance. Dkt. 326 (Mot.) at 1.  Navarro opposes.  Dkt. 328 (Opp'n).  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  Defendant's motion is GRANTED.

## II. Factual Background

This case arises out of toxic air and subsurface emissions allegedly caused by a refinery owned by TORC (the Refinery).  The Refinery has allegedly released contaminants into the air, groundwater, and soil that extend onto private properties, including Navarro's.  Dkt. 328-25 (Additional Genuine Facts in Dispute) (NAGF) at p. 50 ¶¶1-5, 8, 10, 11, 14.

This suit was filed as a putative class action in February 2017. Dkt. 285 (Order Decert. Class) at 2.[1]  The Court eventually certified two subclasses: one related to ground contamination and the other to air contamination.  Id. at 4.  Since then both named plaintiffs withdrew[2] from the case and the Court ordered that the action proceed as an individual action with Navarro as the sole plaintiff.  Navarro has abandoned any nuisance claim based on odor or noise from the Refinery; and his remaining nuisance claims are predicated solely on the increased risk of cancer from the contaminants.  Id. at 6. Navarro filed his Fourth Amended Complaint (4AC) on March 24, 2023, reasserting claims for public and private nuisance.  Dkt. 322 (Order Den. Mot. Dismiss) at 2.

### III. Legal Standard

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).  But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial.  Id. at 323-24; Fed. R. Civ. P. 56(c)(1).  A non-moving party who bears the burden of proof at trial as to an element essential to his case must make a showing sufficient to establish a genuine dispute of fact with respect to the

---

[1] For an in-depth summary of the procedural history of this matter see the Court's July 5, 2022 Order.  Dkt. 285.

[2] A total of four named plaintiffs have withdrawn – at one point leaving counsel without any plaintiff at all.

existence of that element of the case or be subject to summary judgment. See Celotex Corp., 477 U.S. at 322.

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Id. at 250-51. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury ... could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict[.]" Id. at 252. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

## IV. Discussion

Navarro alleges that he "has suffered an increased risk of developing cancer or other harm of importance due to actual exposure to the emissions of toxic contaminants from the Refinery," dkt. 309 (4AC) ¶49, and that this gives rise to claims for public and private nuisance for which he seeks legal and equitable relief, id. ¶¶ 52, 59, 63–64.

### A.    Nuisance Standard

"Anything which is injurious to health, including, but not limited to . . . an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . is a nuisance." Cal. Civ. Code § 3479. "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code § 3480. Every other nuisance is a private nuisance. Cal. Civ. Code § 3481. "A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." Cal. Civ. Code § 3493. "Where [...] the nuisance is a private as well as a public one, there is no

requirement that the plaintiff suffer damage different in kind from that
suffered by the general public and he does not lose his rights as a
landowner merely because others suffer damage of the same kind[.]"
<u>Venuto v. Owens-Corning Fiberglas Corp.</u>, 22 Cal. App. 3d 116, 124
(1971).  To prevail on an action for private or public nuisance, a
plaintiff must "first prove an interference with [his] use and enjoyment
of his or her property."  <u>Chase v. Wizmann</u>, 71 Cal. App. 5th 244, 253
(2021).  Second, he must show that the "the invasion of [his] interest in
the use and enjoyment of the land [was] substantial, i.e., that it causes
[him] to suffer substantial actual damage."  <u>Id.</u>  Third, "the interference
with the protected interest must not only be substantial, but it must
also be unreasonable."  <u>Id.</u>; <u>see also</u> <u>Monks v. City of Rancho Palos
Verdes</u>, 167 Cal. App. 4th 263, 301 (2008), as modified on denial of
reh'g (Oct. 22, 2008)(same elements for public nuisance)

TORC argues that Navarro cannot prove substantiality or
causation, and that there is no evidence Navarro faces a "credible
threat" or "substantial risk" of future harm sufficient for purposes of
Article III standing.[3]

## B.    Substantiality

TORC may discharge its burden by pointing out an absence of
evidence that the harm suffered from the Refinery emissions is both
substantial and unreasonable.  <u>See</u> <u>Celotex</u>, 477 U.S. at 323.  The
burden then shifts to Navarro to provide admissible evidence, beyond
the pleadings, of specific facts showing a genuine issue for trial.
<u>Anderson</u>, 477 U.S. at 256.  If he cannot, summary judgment is proper.
<u>San Diego Unified Port Dist. v. Monsanto Co.</u>, 445 F. Supp. 3d 1098,
1111 (S.D. Cal. 2020)(granting summary judgment because plaintiff

---

[3] For the reasons expressed in the Court's Order Denying TORC's motion to
dismiss, the Court finds that it has subject matter jurisdiction, and the case
is properly before the Court.  Dkt. 322 (Order Deny. Mot. Dismiss) 9.  There
is sufficient evidence in the record that the threat of an increased risk of
cancer is not conjectural for purposes of Article III standing, but also not
substantial for purposes of California Civil Code section 3479.

"failed to present specific facts showing 'substantial and unreasonable' harm from PCP contamination).

Navarro must therefore submit admissible evidence that TORC caused Navarro "to suffer substantial actual damage." <u>Monks v. City of Rancho Palos Verdes</u>, 167 Cal. App. 4th 263, 303, (2008), <u>as modified on denial of reh'g</u> (Oct. 22, 2008).  This requirement is defined by the Restatement as the need for proof of "significant harm," (Rest.2d Torts, § 821F), which it variously defines as a "harm of importance" and a "real and appreciable invasion of the plaintiff's interests" (<u>id.</u>, com. c) and an invasion that is "definitely offensive, seriously annoying or intolerable" (<u>id.</u>, com. d).  "The degree of harm is to be judged by an objective standard, [and] is a question of fact that turns on the circumstances of each case."  <u>Monks</u>, 167 Cal. App. at 303.

The California Supreme Court has noted that

"the semantics of Civil Code, section 3479 provide little guide in ascertaining the degree of danger which must be present for a condition or an activity to be considered a nuisance.  Almost all human activity involves some risk, and in circumstances in which [...] [nuisance is the only cause of action] considerable judicial discretion has been allowed in determining whether an alleged danger is sufficiently serious to justify abatement."  <u>City of Bakersfield v. Miller</u>, 64 Cal. 2d 93, 99 (1966).

The California Supreme Court has yet to resolve "whether a fear of future harm will support a cause of action for private nuisance[.]" <u>San Diego Gas & Elec. Co. v. Superior Ct.</u>, 13 Cal. 4th 893, 939 (1996).  In <u>San Diego Cnty. v. Carlstrom</u>, 196 Cal. App. 2d 485, 491 (1961), the appellate court concluded that building structures that posed an extremely hazardous fire risk were a public nuisance.  The court stated that "[t]he presence in a settled residential community of an unnecessarily extreme fire hazard can well create and maintain that fear in the lives of the people of that community and make of the hazard a public nuisance."  <u>Id.</u>  <u>Carlstrom</u> suggests that future risk of injury, or at least fear of it, can constitute a substantial interference.

However, in <u>Koll-Irvine Ctr. Prop. Owners Assn. v. Cnty. of Orange</u>, 24 Cal. App. 4th 1036, 1041–42 (1994), the appellate court held that "a private nuisance action cannot be maintained for an interference in the use and enjoyment of land caused solely by the fear of a future injury." The court distinguished <u>Carlstrom</u> because that "action was for public nuisance and was brought on behalf of the community by county officials." <u>Id.</u> at 1042. Most recently, in <u>Wilson v. S. California Edison Co.</u>, 21 Cal. App. 5th 786, 805 (2018), the California Court of Appeal held that a fear of future injury may be an alleged harm if the fear is reasonable and there is an ongoing physical invasion of the property.[4]

One major concern courts have with allowing private plaintiffs to extend nuisance liability is that it supplants the role of regulators and legislatures. One California appellate court remarked in a nuisance case that:

> [i]mposing novel tort theories on economic activity significantly affects the risks of engaging in that activity, and thus alters the cost and availability of the activity within the forum jurisdiction. In effect, it is a form of regulation administered through the courts rather than the states regulatory agencies. It is, moreover, a peculiarly blunt and capricious method of regulation, depending as it does on the vicissitudes of the legal system, which make results highly unpredictable in probability and magnitude. Courts should therefore be chary of adopting broad new theories of liability, lest they undermine the democratic process through which the people normally decide whether, and to what degree, activities should be fostered or discouraged within the state...."

---

[4] In <u>Birke v. Oakwood Worldwide</u>, 169 Cal. App. 4th 1540, 1549 (2009) the California Court of Appeal did not reach the question of whether the increased risk of cancer from secondhand smoke could be an injury supporting a nuisance claim, because the plaintiff had asthma and chronic allergies that presented an injury different-in-kind from fear of cancer.

> In re Firearm Cases, 126 Cal. App. 4th 959, 991 (2005) (quoting
> Ileto v. Glock Inc., 370 F.3d 860, 868 (9th Cir. 2004)(Kozinski, J.,
> dis. from denial of rehg. en banc)).

With these concerns in mind, the Court examines whether Navarro has
produced admissible evidence raising a triable issue of substantial
actual damage.

Navarro contends that he has an elevated cancer risk of more
than 10 in 1,000,000 (.00001%) due to TORC's emissions through the
air and ground, and that the risk may have been as high as 29.8 in
1,000,000 in 2020.  Dkt 328-25 Statement of Genuine Disputes (SGD)
¶63; NAGF ¶65.  Navarro's expert, Dr. James Clark, would testify that
anything over 7 in 1,000,000 (.000007%) is unacceptable.  SGD ¶66.
Clark's report relies on regulatory screening levels to establish its
threshold of acceptability.  Clark Decl. ¶14.  As Navarro concedes,
"[w]hile agency guidelines (offered by both parties) are a reference
point for what may be reasonable and substantial [...] [they are not]
dispositive of any threat of harm."  Opp'n at 9.

However, the guidelines that Navarro's expert relies on are not
persuasive reference points.[5]  Clark cites California Health and Safety
Code Sections 25249,5 et seq. and 22 California Code of Regulations
Section 12703(b) for the proposition that risks in excess of 10 in
1,000,000 are unacceptable.  NAGF ¶33; Clark Decl. ¶14.  Section
12703(b) is a part of the Safe Drinking Water and Toxic Enforcement
Act of 1986.  The section establishes the basic principles and
assumptions used in quantitative risk assessments, which the state
uses to determine when exposure to a substance no longer poses a
"significant risk" to the population.  22 California Code of Regulations
Section 12703(a).  "[T]he standards based on risk assessment often are

---

[5] TORC objects to Clark's testimony because it relies on "cherry-picked
regulatory standards" that are not relevant under FRE 401 and violate Rule
702.  Dkt 331-5 (Objs.) at 10.  While the Court finds none of these standards
determinative, they do have a "tendency to make" a substantial injury more
probable, and so are relevant under FRE 401.

set to avoid the risk caused by lifetime exposure at this level. Exposure to levels exceeding this standard for a small fraction of a lifetime does not mean that the overall lifetime risk of regulatory concern has been exceeded." Reference Guide on Toxicology, 2011 WL 7724262, 10. Section 12703(b) states "the risk level which represents no significant risk shall be one which is calculated to result in one excess case of cancer in an exposed population of 100,000 [or 10 in a 1,000,000], assuming lifetime exposure at the level in question, except where sound considerations of public health support an alternative level[.]" This is a risk-based screening level meant to be considered during a preliminary evaluation of a site, not a threshold for actual injury or the substantial risk of it after exposure for a fraction of a lifetime. Proctor Decl. ¶14. The guideline was not designed to regulate airborne emissions from an operating industrial facility and is not used for that purpose. Id. ¶30. It is furthermore subject to the discretion of regulators who have the adequate expertise to make a judgment of when "sound considerations of public health support an alternative level." 22 CCR 12703(b). It is of marginal weight in determining what constitutes a substantial interference in a tort action.

Clark also refers to the Department of Toxic Substances and Control's Toxicity Criteria Rule. 22 CCR §§ 68400.5, 69020–69022.[6] NAGF ¶34; Clark Decl. ¶14. This rule is used in remediation goals for hazardous waste and substance cleanup sites and sets "cancer and noncancer risk-based screening levels[.]" DTSC Toxicity Criteria Rule for Human Health Risk Assessments Responses to Frequently Asked Questions (FAQs), Department of Toxic Substances Control, https://dtsc.ca.gov/toxicity-criteria-rule-for-human-health-risk-

---

[6] Navarro also raises the Toxicity Criteria Rule in its Statement of Genuine Disputes. SGD ¶67. Navarro has disregarded the Court's Standing Order that "[n]o legal argument should be set forth in this document." Standing Order Re Motions For Summary Judgment at 3. Navarro's explanation is that TORC has submitted certain facts that are not material. SGD 2 n. 1. This is not a persuasive explanation, given that the fact in question is material.

assessments-faq/.  The rule defines "[c]ancer risks for contaminants [...] at one in a million (i. e., 1×10-6)."  Id.  Any lower levels are defined as a noncancer risk, which means that "estimated exposure to the contaminant at the screening level over a lifetime is not expected to cause harmful, noncancer health effects."  Id.  In other words, the department has determined that elevated cancer risks below one in a million after lifetime exposure are non-cognizable.  The benchmark for a risk existing is not an appropriate standard for it being a significant harm.  This benchmark also suffers from many of the same defects as Section 12703(b).

Navarro cites a host of other regulations that either require an investigation or more site-specific risk assessment above a screening level of one in a million, or establish a baseline cancer risk as existing. Opp'n at 7–8.  These risk levels were developed by different regulators for regulatory purposes different from setting the appropriate level of refinery emissions.  See, e.g., 40 C.F.R. § 300.430(e)(2)(i)(A)(2) (noting the 10-6 risk level); 22 CCR § 69022(b).  They do not establish that Navarro suffered a significant harm after a limited exposure to TORC's emissions through the air or ground.

The regulatory standard applicable to the Refinery weighs against finding that a .00001% elevated risk of cancer is a substantial nuisance.  TORC's primary regulator is the South Coast Air Quality Management District.  SGD ¶67.  Under the Management District's Rule 1402, emitters that pose a "significant risk" are required to take action to reduce risk of cancer in the community.  SGD ¶68.  A "significant risk" is defined as 100 in 1,000,000 – ten times the alleged risk Navarro faces.  Id.  This is where reduction of risk to the community becomes mandatory.  Id.  It is not alleged that the emissions from the Refinery have ever reached this level.  Rather, TORC entered a Voluntary Risk Reduction Plan with the Management District before the Refinery's emissions became a "significant risk." SUF ¶71.  The Refinery has already reduced its emissions to 7.7 in 1,000,000, which is below the agency's risk requirements and complies with its primary regulator.  Dkt. 326-5 (Ex. 2) B–3.  Unlike the standards cited by Navarro, this standard is crafted by the primary

regulator for emissions from operating refineries.  The Court recognizes that "[t]here is nothing in these regulations indicating that compliance with their terms precludes an action for nuisance." Venuto, 22 Cal. App. 3d at 128.  But the view of TORC's primary regulator should be considered when determining whether its emissions pose a significant harm to Navarro or the community.  The Court is hesitant to supplant the role of regulator, and if Navarro prevailed, the Court would have to award relief that contradicts the agency's finding that TORC does not pose a significant risk to the community.

"The location, character and habits of the particular community are [also] to be taken into account in determining what is offensive or annoying to a normal individual living in it."  Rest.2d Torts, § 821F, com. e.  There is no evidence in the record that a normal person in Navarro's community would be "substantially annoyed or disturbed by the situation."  Rest.2d Torts, § 821F, com. d.  Cancer is undoubtedly a "harm of importance," id., com. c, but the increased risk from TORC's operations is significantly lower than that regularly tolerated by the people of Los Angeles and Torrance.  The toxic air contaminants alleged to cause an increased risk of cancer in and around Navarro's home are at or below background levels in the air from local freeways, the Los Angeles International Airport, and the county's ports.  SGD ¶¶79-82. The cancer risk from air in Torrance and Long Beach is significantly higher than that alleged to come from the facility.  Dkt. 326-7 (Proctor Decl.) ¶61.[7]

_____

[7] Navarro argues that "the comparison of ambient background concentrations as measured in the City of Long Beach is inappropriate, given the proximity of the Del Amo Blvd Neighborhood to the Torrance Refinery."  SGD ¶¶ 79–81.  He also maintains that the level of benzene in his home was higher than ambient air levels.  SGD ¶82.  However, this evidence is offered in order to show that the interference that Navarro claims is substantial is dwarfed by a risk that is tolerated everyday by individuals in his community.  His proximity to the Refinery or the elevated levels of Benzene in his home have no bearing on this fact.

TORC points to a lack of evidence that Navarro personally finds the Refinery's emissions to be a substantial nuisance.  The burden shifts to Navarro, whose own testimony fails to raise a triable issue that he finds the Refinery's emissions offensive, seriously annoying, or intolerable.  There is no evidence that he has suffered anything like substantial actual damage.  Navarro has lived at his residence for almost twenty-five years.  SGD ¶5.  He does not believe he has ever gotten sick from the Refinery's emissions and attributes no health problems to them.  SGD ¶7.[8]  He does not allege that the emissions have impacted the value of his property or that he has incurred any expense in connection with them.  SGD ¶¶18, 22.  The only reason he believes his health is at risk is because his lawyers and the experts told him so.  SGD ¶40.  The amount of Benzene Navarro allegedly inhales from the Refinery is approximately ~3.2 µg per day (Proctor Decl. ¶52); but from 1998 to 2014 Navarro smoked ten to twelve cigarettes per day, each of which contained 55 µg of Benzene.  Id. ¶51; SGD ¶8.  During this time, cigarette packaging displayed a surgeon general's warning that the product causes lung cancer.  History of Cigarette "Warning" Labels, Tobacco Institute Records; RPCI Tobacco Institute and Council for Tobacco Research Records; Master Settlement Agreement,

---

Navarro also objects that this paragraph of Proctor's declaration is "conclusory."  Dkt. 328-24 (Objs.) 21.  Navarro cites Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) for the premise that "statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment."  He omits the next two sentences: "Objections on any of these grounds are simply superfluous in this context. Again, instead of challenging the admissibility of the evidence, lawyers should challenge its sufficiency."  Id. (internal citation omitted).  Proctor's statement regarding air toxics in the local community is a scientific fact, not a legal conclusion.

[8] Navarro's objections to his own deposition transcript are OVERRULED.  Objs. at 2, 7–8, 10.  The testimony is relevant to showing his own annoyance and fear of future harm from the Refinery.

University of California San Francisco Library,
https://www.industrydocuments.ucsf.edu/docs/sfvh0038.

As evidence of a substantial nuisance, Navarro asserts that he closes his windows when his children visit and is worried about his grandchildren spending time in the backyard due to the health risks. SGD ¶¶30–32.  However, he has never told his children that spending time outside could expose them to pollution or endanger their health in any way.  Dkt. 328-2 (Ex. A) 78:24–79:6.  Although he testified that he spends most of his time indoors due to emissions from the Refinery, he also testified that he and his wife eat meals in their backyard and grow a lemon tree from which they share lemons with their children and the community.  SGD ¶¶34–38.  He has never spoken to his family (or anyone else) about his fear or the ways in which the emissions from the Refinery have affected him.  SGD ¶¶33-35.[9]  Taking the record as a whole, Navarro presents at most a scintilla of evidence in his effort to raise a triable issue.  No reasonable juror could find by a preponderance of the evidence that the alleged nuisance is substantial.[10]  Navarro's private and public nuisance claims fail as a matter of law.

## V. CONCLUSION

TORC's motion for summary judgment is GRANTED.

---

[9] Navarro's objection is OVERRULED.  Objs. at 9.  The evidence is relevant to showing that emissions from the Refinery have not substantially interfered with Navarro's property rights.

[10] It is therefore not necessary to reach the issue of reasonableness, causation, or whether Plaintiff's jury demand should be stricken for lack of damages.

IT IS SO ORDERED.

Date: October 18, 2023

Dale S. Fischer
United States District Judge